# WYMAN v. COLORADO NATIONAL BANK.

1. Plaintiff drew his sight draft on D in London, payable to the order of C, a banker, delivered it to C to collect and place to account of plaintiff; C transmitted the draft to defendant, endorsed, "Pay to the order of the Colorado National Bank for account of C;" C was indebted to the Colorado National Bank (defendant) at the time for balance, overdraft. The draft was paid; after payment, but before proceeds came to defendant's hands, defendant was notified that plaintiff had delivered the draft to C for collection, and that plaintiff claimed the proceeds; *held*, that defendant was not liable in assumpsit for the proceeds.

2. The possession by an indorsee of negotiable paper imports *prima facie* that it was acquired *bona fide* for full value in the usual course of business before maturity, and without notice of any circumstance impeaching its validity, and that such holder is the owner, and entitled to recover the full amount against all prior parties.

3. By the law merchant a banker has a general lien on all securities deposited with him by a customer, for his general balance, unless there is a contract, express or implied, inconsistent with such lien, and of this the court will take judicial notice.

4. It is an elementary rule that whenever one of two parties must suffer by the act of a third, he who has enabled that third person to occasion the loss, must sustain it himself rather than the other innocent party.

*Error to County Court of Arapahoe County.*

. THE facts are sufficiently stated in the opinion.

Mr RADCLIFFE B. LOCKWOOD, for plaintiff in error.

Messrs. CHARLES & DILLON, for defendant in error.

STONE, J. Plaintiff in error (and plaintiff also in the court below), on the 10th day of January, 1877, drew his sight draft on one George G. Dainty, Rugby, England, for the sum of one hundred pounds sterling, payable tc the order of George C. Corning, a banker of Boulder, Colorado, and delivered the same to the said Corning to collect and place to the credit of the plaintiff's account at the bank of the said Corning, at Boulder. Corning immediately transmitted the draft by letter to the defendant, which letter is as follows:

BOULDER, COLORADO, Jan'y 13, 1877.

WM. B. BERGER, ESQ.,

      Cashier, Denver:

DEAR SIR: Your favor of the 12th is received with enclosure as stated. We credit $10.00, and your No. 49,788, $26.15; no protest.

Respectfully Yours,

GEORGE C. CORNING,<br>Thompson.

I inclose for collection and credit my

No. 2385, Norwood,...............................$100.00

My No. 2384, Dainty, England,...................£100.00

The draft was endorsed as follows:

"Pay to the order of the Colorado National Bank for account of George C. Corning, Boulder, Colorado."

At the time the draft was thus received by the defendant, Corning was indebted to the defendant in the sum of $10,-975$\frac{04}{100}$, for balance of overdrafts.

On the 28th of February, the defendant was advised by its New York correspondent that the draft had been paid. A few days previous to this date, defendant was informed by telegraph from its said New York correspondent that the latter had been notified by telegraph that the draft belonged to Wyman, who had delivered it to Corning for collection, and that as Corning had failed, Wyman claimed the proceeds of

the draft.    This notice was before the proceeds had come into the hands of defendant, but after the draft had been paid in London.    On the 15th of March, plaintiff, through his attor neys, notified the defendant by letter that he claimed the proceeds of the draft, and demanded payment thereof.    The exact date of the failure of Corning is not given in the record, but from the testimony referring thereto, it appears to have been in the latter part of February.    From the evidence preserved in the record it appears, both by the testimony of Thompson, cashier of the Boulder bank (which was owned by Corning), and by copies of the book accounts of both banks, that the two banks were mutual collection agents, correspondents, and depositaries for each other in respect to funds collected for and remitted by and to each, according to the usual course of banking business.    The checks of each bank were paid by the other, and transactions embracing collections, checks and remittances of daily occurrence were debited and credited on the books of each, and a settlement of accounts was had upon the first of each month.

By frequent remittances by Corning and credits to his account, the balance of nearly eleven thousand dollars against him at the date of the draft in question, was gradually reduced, so that at the time he was credited with the proceeds of the draft, the balance against him was but little over seven hundred dollars.    Between these dates this balance had fluctuated considerably; for example, on the 17th of January it had become reduced to $5,111\frac{11}{100}$, while on the 29th of the same month the amount had increased to $8,225\frac{63}{100}$.

Plaintiff brought his action in assumpsit on the common counts to recover the amount of the draft.    Trial was had to the court and judgment rendered in favor of defendant for costs.    Plaintiff brings the record to this court for review, and assigns for error, the finding and judgment of the court below upon the facts as we have substantially stated them.

The principal question to be determined is, whether upon the facts in the case the defendant, when he received the draft

from Corning, became a *bona fide* holder for value or upon a sufficient consideration, and without notice of any infirmity of title as between antecedent parties, so as to be protected from the equities of the plaintiff.

That one who acquires negotiable paper in good faith for a valuable consideration from one capable of transferring the same, becomes a *bona fide* holder, unaffected by prior equities, unless it be shown that he had notice thereof, is a fundamental principle of commercial law.

The indorsement of Corning as payee, was sufficient to transfer the legal title of the draft to the Colorado National Bank, and vest in it the complete ownership. The possession of the paper by the defendant as such indorsee, imported *prima facie* that it was acquired in good faith for full value, in the usual course of business, before maturity, and without notice of any circumstances impeaching its validity; and that such holder was the owner thereof, entitled to recover the full amount against all prior parties. 1 Daniels on Negotiable Instruments, Sec. 812. And although the burden of proof may be shifted during the course of the trial, yet when such possession is once shown, the burden of proof is then upon the one seeking to impeach any of the elements of validity or rights of the holder which such possession implies. *Ibid.*

We cannot find that there was any evidence offered to rebut the presumptions fairly arising in favor of the defendant. Receiving the draft in the usual course of business from the payee, who was largely indebted to the bank, and who endorsed the paper "for account" of himself specially, and who transmitted it with directions "for credit" as well as for collection, the officers of the bank so receiving may well have inferred that Corning was the owner of the draft, and intended the proceeds to be applied in extinguishment *pro tanto* of his indebtedness to defendant. True, the defendant was notified that plaintiff was the equitable owner of the draft, before the proceeds had come into possession of the defendant, but this was unavailing against the right acquired by defendant *imme-*

*diately upon receipt of the draft*, to retain the proceeds against the balance due from the endorser. *Clark* v. *The Merchants Bank*, 2 N. Y. 384. In Vol. 1, of his work on Negotiable Instruments, Sec. 823, Mr. Daniel, in treating of the rights of a holder of a negotiable instrument as collateral security for a debt, says: "The test question then is simply this: *has there been a change in the legal rights of the parties?* If so, the transfer is irrevocable without the holder's consent." Here, as we have shown, the transfer being valid, without notice of prior rights, and upon a sufficient consideration, there was a complete change in the legal rights of the parties. The legal title passed from the plaintiff, and became vested in the defendant. In respect to the consideration, it is well settled by the great weight of authority, that the endorsee of a negotiable instrument received in payment of, or as security for a pre-existing debt, is a *bona fide* holder for a valuable consideration, and entitled to protection as such. *Allaire* v. *Hartshorne*, 1 Zabriskie, 665; *Atkinson* v. *Brooks*, 26 Vt. 569; *Bank of Republic* v. *Carrington*, 5 R. I. 515; *Brush* v. *Scribner*, 11 Conn. 388; *Manning* v. *McClure*, 36 Ill. 490; *Smith* v. *Tyson*, 16 Peters, 1.

By the law merchant a banker has a general lien on all securities deposited with him by a customer, for his general balances, unless there be an express contract, or circumstances that show an implied contract inconsistent with such lien, and of this the court will take judicial notice. *Brandāβ* v. *Barnett*, 3 Manning, G. & S. 530.

In this case there is nothing in the evidence to show that the draft in question was received under special circumstances, such as would take it out of the common rule of *lex mercatoria*. The circumstances of the case in *The Bank of the Metropolis* v. *The New England Bank*, 1 Howard, 234, are almost identical with those of the case before us. The New England Bank delivered to the Bank of the Commonwealth negotiable paper for collection. The Bank of the Commonwealth transmitted the same to the Bank of the Metropolis,

which latter bank made the collection and retained the proceeds for the balance owing it by the Bank of the Commonwealth, which failed while the funds were in the hands of the Bank of the Metropolis. In reversing the judgment which the New England Bank obtained in the Circuit Court against the Bank of the Metropolis, for the amount of funds collected, Chief Justice Taney, in delivering the opinion of the Supreme Court of the United States, says: "It is evident that a loss must be sustained, either by the plaintiff or defendant in error, by the failure of the Commonwealth Bank. We see no ground for maintaining that there is any superior equity on the side of the New England Bank. It contributed to give to the corporation, which was proved insolvent, credit with the plaintiff in error, by the notes and bills which it placed in its hands to be sent to Washington for collection, indorsed in such a form as to make them *prima facie* the property of the Commonwealth Bank, and enabled it to deal with them as if it were the real owner. The Bank of the Metropolis, on the contrary, is in no degree responsible for the confidence which the defendant in error reposed in its agent. When this misplaced confidence has occasioned the loss in question, it would be unjust to throw it upon the bank which has been guilty of no fault or want of caution, and which was induced to give the credit by the manner in which the defendant in error placed its property in the hands of an agent unworthy of the trust." The case coming up again to the Supreme Court, the same learned judge, in laying down the proper instructions which should have been given the jury, says: "But if the jury found that in the dealings mentioned in the testimony, the Bank of the Metropolis regarded and treated the Commonwealth Bank as the owner of the negotiable paper which it transmitted for collection, and had no notice to the contrary, and upon the credit of such remittance made or anticipated in the usual course of dealing between them, balances were from time to time suffered to remain in the hands of the Commonwealth Bank, to be met by the proceeds of such negotiable paper,

then the plaintiff in error is entitled to retain against the defendant in error for the balance of account due from the Commonwealth Bank." *Same case*, 6 Howard, 662.

The correctness of this rule is affirmed in *Sweeney* v. *Easter*, 1 Wallace, 166, and the same doctrine is held in the case of *Clark et al.* v. *The Merchants' Bank*, 2 N. Y. (Court of Appeals), 380. We think the rules thus laid down apply with peculiar force to the case at bar. The credit here given was in allowing balances to remain in the hands of the Boulder Bank, to be met by the proceeds of such negotiable paper, among other remittances, which the evidence shows was from day to day received and applied in the extinguishment of these balances.

There is, too, in such cases, a certain credit given to the debtor, arising out of the forbearance of the creditor in suffering the balances to remain overdue. *Atkinson* v. *Brooks, supra; Bank of the Republic* v. *Carrington et al. supra*, p. 552. And this consideration is much stronger in this case, where a large balance was allowed to remain beyond the periodical monthly settlements or statements of account rendered, and where such balance was all on one side. In this, as in all other like cases, there is a hardship in the loss, let it fall upon either the plaintiff or the defendant, but it is an elementary rule that whenever one of two parties must suffer by the act of a third, he who has enabled that third person to occasion the loss must sustain it himself rather than the other innocent party. The court below evidently found that the facts in this case bring it within the law which governs in the case of a *bona fide* holder of negotiable paper for value and without notice, so as to discharge the defendant of the equities between the original parties, and as we think the finding was warranted by the evidence, we see no reason to disturb the judgment.

*Judgment affirmed.*