## MERCHANTS' BANK v. McCLELLAND.

1. The cashier of an unincorporated bank, who is also a partner, and is alone authorized to transact all the business, and in whose name contracts are habitually made for the bank, may become by virtue of such a contract the trustee of an express trust, and under the code may sue thereon in his own name.

2. An antecedent debt may constitute good and sufficient consideration for the contract of assignment in connection with a negotiable instrument.

3. The rule that the assignee of a negotiable instrument for value in good faith, before maturity may recover against the maker is not affected by the circumstance that such assignee is in possession of facts sufficient to arouse suspicion, and is negligent in not pursuing such information to discover the fraud or illegality to which the facts may seem to point.

4. The expression "due course of trade" is said to be when the holder has given for the note his money, goods or credit at the time of receiving it, or has on account of it incurred some loss or liability.

*Appeal from District Court of Clear Creek County.*

IN 1882 one Orrin Skinner, on various false and fraudulent pretenses, obtained large sums of money from several banks in Georgetown, Idaho Springs, and other places, by getting cash on drafts which were returned unpaid. On the 26th day of October of that year, Skinner obtained from the Bank of Idaho Springs, of which McClelland, the appellee, was cashier, the sum of $2,500, by presenting a draft on Cummings & Co., New York. About the 30th of the same month, McClelland learned by telegraph that this draft was protested. He at once instituted inquiries to ascertain the whereabouts of Skinner, and finally, about the 3d of November following, succeeded in intercepting him while on his way to Denver, and securing an interview at the depot in Idaho Springs. Payment of the draft was demanded. Skinner tendered to McClelland as such payment a draft which he had with him, drawn in his favor by the Merchants' Bank of Georgetown, the appellant herein, on its New York cor-

respondent, for $3,000. Upon examining this draft, and becoming satisfied of its genuineness, McClelland accepted the same in payment, promising to remit the balance to Skinner, after deducting the $2,500, with interest and certain expenses agreed upon. The latter draft was obtained by Skinner from the Merchants' Bank in exchange for his draft upon Cummings & Co. of New York. When it was presented by McClelland or his agent, appellant had been advised of Skinner's character and irresponsibility, and promptly declined to pay it. Thereupon McClelland brought this action in his own name, averring substantially, among other things, that, in receiving the draft as aforesaid for the Bank of Idaho Springs in payment of a debt due it, he became the trustee of an express trust. The defendant answered, basing its defense upon two principal grounds: *First,* that plaintiff was not the real party in interest, nor the trustee of an express trust, and therefore could not maintain the suit; *second,* that the circumstances under which the draft was obtained were such as to allow defendant the same defenses to the suit as it would have had against the original payee. Verdict and judgment for plaintiff. Appeal.

The remaining material facts are sufficiently stated in the opinion.

Messrs. Morrison and Fillius, for appellant.

Messrs. T. B. Bryan and H. W. Hobson, for appellee.

Helm, J. The Bank of Idaho Springs was not a corporation. It was simply a partnership, composed of several individuals who contributed their money or labor to the enterprise. Plaintiff was one of the partners, having invested his own money in the undertaking. He was also the cashier. He had the custody of the funds, likewise the general management and control. He alone authorized loans and discounts, and transacted all of the

business. In his name, as cashier, contracts were habitually made for the-bank.

Section 5, Code Civil Procedure, provides that the trustee of an express trust, though not the real party in interest, " may sue without joining with him the person or persons for whose benefit the action is prosecuted." It then gives the definition of such trustee as including "a person with whom or in whose name a contract is made for the benefit of another." The assignment, though made to McClelland as cashier, was in reality for the benefit of the Bank of Idaho Springs. Under our statute he became the trustee of an express trust, and as such was entitled to maintain the suit in his own name. The following cases, while not dealing with facts exactly similar, are yet sufficiently analogous in principle to be regarded as authorities supporting this conclusion: *Considerant v. Brisbane*, 22 N. Y. 389; *Burbank v. Beach*, 15 Barb. 326; *Wolcott v. Standley*, 62 Ind. 198; *Davis v. Reynolds*, 48 How. Pr. 210, and cases there cited. For many years the principle that an antecedent debt might constitute good and sufficient consideration for a new contract was denied, and there is yet conflict on the subject among the cases; but notwithstanding the contrary position of New York, Maine and other states, the decided weight of authority now supports the doctrine that such consideration is amply sufficient in connection with negotiable instruments. 1 Daniel, Neg. Inst. § 184; *Swift v. Tyson*, 16 Pet. 1; 3 Kent, Comm. 80; *Roberts v. Hall*, 37 Conn. 205; Pars. Notes & B. 257. For additional cases, see note found on page 273, 9 Amer. Dec.

This court has held " that one who takes *property* in payment or security of a pre-existing debt is to be regarded as a purchaser for valuable consideration." *Knox v. McFarran*, 4 Colo. 586; *McMurtrie v. Riddell, ante*, p. 497. If there is nothing upon the face of a negotiable instrument, or in the written indorsement or assignment, to notify the assignee that the instrument was

originally given upon an illegal consideration (gambling debts excepted), or obtained through fraud, the assignee who pays value therefor, and takes the same in good faith before maturity, may recover as against the maker. This is true, even though such assignee be in possession of facts or circumstances sufficient to arouse suspicion in the mind of a person of ordinary prudence; and though he is guilty of negligence in not first following up such information for the purpose of discovering the fraud or illegality to which the suspicious circumstances may seem to point. The latter part of this rule is not wholly unquestioned. Such able courts as that of Massachusetts deny its correctness; but we think it is supported by the better reason, as well as the great preponderance of authority. It is founded upon commercial necessity. The untrammeled circulation of these instruments is a matter of supreme importance in the vast field of mercantile transactions. Drafts, bills of exchange and other negotiable instruments take the place of money, and circulate almost as freely. To hold that each assignee must, before accepting them, inquire into each and every suspicious circumstance bearing upon the original execution, or pointing to possible defenses in a suit between the original parties, would produce serious inconvenience to the commercial world. Even as to instruments given for gambling debts, the courts submit to the statutory command with extreme reluctance. See the following cases, and others referred to therein: *Swift v. Smith*, 102 U. S. 442; *Hotchkiss v. National Banks*, 21 Wall. 354; *Murray v. Lardner*, 2 Wall. 110; *Brown v. Spofford*, 95 U. S. 474; *Welch v. Sage*, 47 N. Y. 143.

In *Kimbro v. Lytle*, 10 Yerg. 423, "due course of trade" is said to be "where the holder has given for the note his money, goods or credit at the time of receiving it, or has on account of it incurred some loss or incurred some liability." The assignment of negotiable paper by operation of the bankrupt laws of the United States, by

operation of an assignment statute of the state, and the voluntary assignment by an insolvent to a trustee for the benefit of creditors, have each and all been declared to be assignments not in the regular course of business. In *Merriam v. Granite Bank*, 8 Gray, 254, it was held that the assignment of a note to a bank under such circumstances as to constitute an assignment without recourse was not made in the due course of trade, because such "is not the usual course of transferring a security indorsed in blank." The court, per Chief Justice Shaw, further says: "Had this note, with or without the indorsement of Willis & Co., been discounted by the bank, making it their own upon the credit of the parties to it, simply deducting the discount, it would have presented a far different question." The learned Chief Justice proceeds: "It is not easy to prescribe a general rule as to what shall be the common course of business. It must depend much upon the circumstances of each particular case."

In the case at bar the draft sued on was duly assigned by Skinner to plaintiff in payment of the $2,500 due from the assignor to the Bank of Idaho Springs. It is true, plaintiff invited the town marshal to go with him to the train, and it is also true that the constable and perhaps a justice of the peace, through the invitation of a third party, were present. But the evidence shows that the transaction was amicable throughout. Plaintiff informed Skinner that his draft had been dishonored, and asked payment. Skinner willingly consented to and did make payment by means of the draft now in suit. He presented another draft at the same time, drawn by a third bank in his favor for the sum of $2,400, which plaintiff recognized as genuine. That sum being insufficient, plaintiff accepted the $3,000 draft instead. There is nothing to show that Skinner knew of the presence of a marshal, constable, or justice of the peace. No threats or coercion on the part of plaintiff, other than a simple

demand for his money, appear in evidence.   The circumstance that Skinner had procured the discounting by plaintiff of a draft which had afterwards been dishonored, might have been sufficient to arouse a suspicion that the draft of defendant had not been procured in good faith; but the protestations and conduct of Skinner at the depot would naturally tend to allay such suspicion.   Besides, we have seen that the existence of suspicions of this character is not alone sufficient.   We do not find in the evidence anything to warrant the conclusion that plaintiff was guilty of *mala fides* in the transaction; and, since the rule which we have adopted is that an antecedent debt constitutes sufficient consideration to support the assignment of such paper, it is as though plaintiff had purchased the draft, paying full value therefor. The assignment did not take place in the bank, and over the cashier's desk or counter; but this is a matter of no special importance.   We find no case that would sustain us in holding that the transaction did not take place in the due or regular course of business.

The foregoing conclusions dispose of all appellant's objections we deem it necessary to discuss, save one.   It is claimed that the first instruction given on behalf of plaintiff excluded the element of bad faith from the consideration of the jury; that it practically informed the jury that, if the assignment was for a valuable consideration and before due, plaintiff could not have been guilty of bad faith,— a proposition which would be clearly erroneous.   But an examination of the instruction, as contained in the original transcript on appeal, shows that counsel have inadvertently misquoted the language, and changed the punctuation of the court, both in their abstract and in their brief.   Counsel for the appellee contend that the instruction as originally given contained the word "and" before "is" in the fifth line of the transcript, which word has been omitted therefrom by the scrivener; and say that a duly authenticated copy of the in-

struction as given is filed in this court. We do not find such authenticated copy. Besides, if we did, and if it were filed without first obtaining leave of court, thus making it properly a part of the record, we could not consider it. Taking the instruction, however, as it appears in the transcript, in connection with the rest of the charge, we are satisfied that it could not have misled the jury. The element of bad faith on plaintiff's part is fairly included in the succeeding instruction; and only by a change of punctuation, and an unnatural addition, can it be viewed as wholly omitted from this one. Considering the charge as a whole, we think the jury were sufficiently informed of their duty in this behalf.

The hardship suffered by appellant is to be regretted. But, under the legal principles announced, we do not see how it can escape liability in this action.

The judgment is affirmed.

*Affirmed.*