## COORS V. GERMAN NAT. BANK.

1. NEGOTIABLE INSTRUMENTS — BONA FIDE PURCHASERS.— Where A. indorses drafts in blank to B. for collection, and B., wrongfully assuming to be the owner, sells and disposes of them to C., who has no knowledge of the want of ownership in B., C. is invested with good title, so as to retain the proceeds as against A.
2. C. is not chargeable with notice of ownership in A. by the fact that in B.'s letter, sending the drafts to C., they were described as "A.'s acceptances."

*Appeal from Superior Court of Denver.*

ACTION by the German National Bank of Denver against Adolph Coors, to recover the amount of a thousand-dollar note executed by defendant and discounted by plaintiff. There was judgment for plaintiff, with allowance of certain offsets. Defendant appeals.

L. S. DIXON, for appellant.

PATTERSON & THOMAS, for appellee.

REED, C. Coors, the appellant, who was defendant below, was, and for many years had been, a brewer at Golden, Jefferson county. His sales were mostly by car-lots or large quantities, shipped to various parties, and sold on time. It was his custom on the shipment to fill an order to draw a draft payable to his own order, and, at the expiration of the time of credit given, send the draft to the consignee for acceptance, to be returned to him. F. E. Everett was a private banker at Golden, and had been for many years. In July, 1884, he died insolvent. He kept an account and transacted business with appellee in Denver, and acted as agent and correspondent of appellee at Golden. Appellant Coors transacted his business and kept his account with Everett until the time of his death. His accepted drafts, when returned to him, were by him indorsed in blank, and deposited with Everett; the proceeds to be placed to his

credit when collected.   When in need of money he made his notes payable to Everett, by whom they were discounted.   It appears that Everett was in the habit of rediscounting these notes with appellee, which fact was not known to Coors; and, as appellee was in the habit of transmitting the notes at maturity to Everett for collection, Coors did not, necessarily, know that the notes had been rediscounted.

On the 26th of March, 1884, Coors made his note to Everett for $1,500, payable ninety days after date, with interest.   On the 8th of May, Coors made a note for $1,000, with interest, payable to Everett sixty days after date, which was the note on which this suit was brought. Both notes were indorsed in blank by Everett, and rediscounted for him by the appellee.   After the death of Everett, Coors opened an account with the appellee.   On the 8th day of May, 1884, Coors drew a draft on Keppler & Co., of Leadville, payable at sixty days, for $471.90. On the 21st of May he drew a second draft on Keppler for the same amount, at sixty days.   On the 27th of May he drew his draft on Dyer & Northington, of Rawlins, Wyo., for $748.25, at sixty days.   On May 14th he drew his draft on Crystal Bros., Pitkin, Colo., for $228, at seventy-five days,— all of which drafts were accepted by the drawees, returned to Coors, indorsed by him in blank, and deposited with Everett for collection.   The drafts above described amounted in the aggregate to $2,131.12. The drafts were not discounted by Everett, nor passed by him to the credit of Coors.

On the 24th of June, when the two notes of Coors for the sums, respectively, of $1,500 and $1,000, were nearing maturity, Everett applied to appellee to have the Coors drafts above described, and perhaps others, discounted to meet the maturing notes.   On the 27th of June an interview was had on the same subject, at which appellee declined to discount drafts to meet both notes, but discounted drafts on Crystal Bros. for $228,

Keppler's draft of May 21st for $471.90, and draft on Dyer & Northington for $748.25, to pay the note of $1,500. The note, having been paid by Everett to appellee, was returned to Everett; and Coors, knowing nothing of the discount of his drafts by Everett to pay the note, and having no knowledge of the rediscount of the note by appellee, paid the same to Everett. The other drafts, not discounted, were left with appellee for collection. When collected, the proceeds were to be put to the credit of Everett. At the time of Everett's death, the note of Coors for $1,000 was unpaid in the hands of appellee. There was at that time, or afterwards, a small balance in its hands, the proceeds of collections of Coors' drafts, to the credit of Everett. At the time of the bringing of this suit there was also in the hands of appellee a small balance to the credit of Coors. This suit was brought to recover the amount of the $1,000 note. The defendant pleaded payment, and set up as counterclaims the amounts received by appellee on each of the above-mentioned drafts of Coors, collected by appellee. The case was tried by the court without a jury, who allowed as offsets the balance of proceeds of the Coors drafts to the credit of Everett in the hands of the appellee, and the balance on the account of Coors in the bank to the credit of Coors; leaving a balance on the note of $364.18, for which appellee had judgment.

There was no serious dispute in regard to the facts. It was not claimed that Coors had any knowledge of the rediscounts of the notes made by Everett with appellee, nor the transfer and discounts of his drafts left for collection with Everett; nor is it claimed that appellee had any actual notice or knowledge that Everett was not the owner of the drafts of Coors.

The contention for Coors is — *First.* That under the circumstances proved, as above stated, appellee could not acquire title to the drafts. *Second.* That by the language used in the letters of Everett in regard to the

Coors drafts, appellee was notified, or should have been, that they were not the property of Everett, but of Coors. The language relied upon was as follows:

"Golden, Colo., July 8th, 1884.    W. I. Jenkins, Esq., Cashier, Denver— Dear Sir: I advise Cr. to-day of 15844, A. Coors, due Ju. 27, $1,500, int. $5, $1,505.    Of the list of collections left with you of his, amt'g $2,617.05, $697 has been paid, & placed to Cr. my ac.," etc.

Also of July 12: "I note disc'ts Coors, $1,438.55, from list, leaving our 20144, $471.90, due 10th, and extended five days as a collection for Cr. when paid."

And from a memorandum made by Everett, and handed Jenkins, cashier of appellee, dated June 27th, on which Everett had written: "Discount A. Coors accept'cs, coll'n No. 20144. Rem. June 6th, Keppler & Company, Leadville, due June 23 & 26th, $468.75," etc.

We do not think the position of counsel on this last point tenable, and that there was anything in the language used by which appellee could be informed of anything in regard to the ownership of the drafts.    It can only be regarded as description to designate the paper. We can find no authority, and none is cited by counsel, where it is held that any such descriptive language can be construed to indicate ownership; and certainly no such inference could arise when Everett was the holder of them, properly indorsed without limitation, and dealing with them as his own.

The only question to be determined is whether Coors, having indorsed the drafts in blank to Everett for the purpose of having them collected and the proceeds placed to his credit, and Everett, wrongfully assuming to be the owner, could sell and dispose of them, and appellee, without knowledge of the want of ownership in Everett, could be invested with good title, so as to retain the proceeds as against Coors.    It is a well-settled rule of law that one who acquires negotiable paper, in the usual course of business, before maturity, in good faith, for a

valuable consideration from one capable of transferring the same, becomes a *bona fide* holder, and takes it divested of all prior equities. See sec. 4, ch. 1, Code. And it has been so held in this court. *Wyman v. Bank*, 5 Colo. 30, and *Bank v. McClelland*, 9 Colo. 608.

It is contended by the able counsel of appellant that "it was the duty of the bank proposing to purchase from Everett to have sought Coors and ascertained from him whether Everett had any authority to sell or not." This is not in harmony with the law or the decisions of this court. In *Bank v. McClelland*, *supra*, it was said by the present chief justice, at page 610: "If there is nothing upon the face of a negotiable instrument or in the written indorsement or assignment to notify the assignee that the instrument was originally given upon an illegal consideration (gambling debts excepted), or obtained through fraud, the assignee who pays value therefor, and takes the same in good faith before maturity, may recover as against the maker. This is true, even though such assignee be in possession of facts or circumstances sufficient to arouse suspicion in the mind of a person of ordinary prudence, and though he is guilty of negligence in not first following up such information, for the purpose of discovering the fraud or illegality to which the suspicious circumstances may seem to point."

The rule adopted in this court is that of the federal courts and a majority of the states. See *Bank of Metropolis v. New England Bank*, 1 How. 234, 6 How. 212; *Swift v. Smith*, 102 U. S. 442; *Hotchkiss v. Banks*, 21 Wall. 354; *Murray v. Lardner*, 2 Wall. 110; *Brown v. Spofford*, 95 U. S. 474.

We are aware that in the state of New York, and some other states following its decisions, the rule as adopted in this state is considerably modified. But the federal rule, as here adopted, appears to be the better rule, better founded in reason, and necessary in the interest of commerce, that requires that such paper should be allowed

to pass from hand to hand with the greatest freedom possible consistent with safety; and it works no injustice to the owner of paper to say that he shall be held responsible for his own acts, and not an innocent party who has been misled by them.

Coors could by a word have limited his indorsement so as to protect himself and others. That he failed to do so was not the fault of appellee, but his own, and he must suffer the loss according to a principle so well known that a repetition here is unnecessary. The judgment should be affirmed.

PATTISON and RICHMOND, CC., concur.

PER CURIAM. For the reasons stated in the foregoing opinion the judgment is affirmed.

*Affirmed.*