MONROE L. TOURTELOTTE, PLAINTIFF IN ERROR, v. JOSEPH M. BROWN, DEFENDANT IN ERROR.

1. MIS-TRIAL—FAILURE OF JURY TO DETERMINE THE CONTROLLING ISSUE.—The plaintiff, assignee of promissory note, brought suit thereon against the administrator of the maker, who interposed several defenses thereto, but the controlling issue raised by the pleadings was whether the note was genuine or a forgery. In the submission of the case to the jury on the evidence the direct question, whether or not the note was genuine, was submitted to them for a special finding. The jury returned a general verdict for the defendant, but as to the question propounded they returned that they could not agree. This was equivalent to a failure to find and agree upon any verdict in the case, and it was error for the court to accept the verdict and render judgment upon it.

2. ABUSE OF DISCRETION IN CROSS-EXAMINATION OF WITNESS.—While the order of introducing testimony and the latitude allowable in cross-examination of witnesses is largely in the discretion of the trial court, it is an abuse of discretion to allow the plaintiff's witness to become a general witness for the defense on cross-examination, as to matters not embraced in the examination in chief, and thus deprive the plaintiff of his right of cross-examination.

3. EVIDENCE NECESSARY TO INVALIDATE COMMERCIAL PAPER IN HANDS OF ASSIGNEE.—The admission in evidence of the record of a former suit on a promissory note wherein no final judgment was entered, when the same note is again put in suit by a different and subsequent assignee thereof for value and before maturity, for the purpose of discrediting it in the plaintiff's hands by showing the notoriety of the defenses thereto, and thus to allow the jury to infer knowledge thereof on part of the plaintiff that would invalidate his title, is error. Such knowledge must be affirmatively established as against the assignee of commercial paper and cannot be inferentially formed by a jury from proof only of the existence of facts of this character. It was likewise error to instruct the jury that they might consider such litigation in determining whether plaintiff was a *bona fide* holder.

4. CHARACTER OF EVIDENCE NECESSARY TO SUPPORT VERDICT.—Mere suspicion of the want of good faith on part of a plaintiff, unsupported by evidence, cannot be made the basis of a verdict against him. The purchaser of commercial paper is presumed by the law merchant to be the holder for value, and to have purchased paper not due in good faith, and this presumption must be overcome by competent testimony. Evidence of want of consideration, fraud in obtaining, irregularity in transferring, or knowledge of defenses by intermediate holders or indorsers, in the absence of testimony impeaching the *bona fides* of the transaction by the holder, is inadmissible.

### Error to District Court of Arapahoe County.

DEFENDANT in error was sued in his representative capacity as administrator of the estate of Francina Hawkins, who died in the year 1889, leaving two daughters, Mrs. Maggie A. Hurd and Mrs. Pickard. This action was brought by plaintiff in error, who resides, or did at the time of the transaction, in the state of Wisconsin, as assignee of a promissory note of which the following is a copy:

"DENVER, July 30, 1887.

"In consideration of the payment of three hundred dollars in cash, the receipt whereof is hereby acknowledged, and other good and valuable consideration, I promise to pay to Maggie A. Hurd the sum of eight thousand dollars, thirty months after date, with interest at eight per cent, per annum from date until paid, interest payable every six months, or to be compounded.        FRANCINA HAWKINS."

On the back of said note are the following indorsements:
"Pay to Steele & Malone or order.

"MAGGIE A. HURD.

"Pay to John F. Tourtelotte or order.

"STEELE & MALONE.

"Pay to M. L. Tourtelotte or order.

"JNO. F. TOURTELOTTE."

The assignment of the note from John F. Tourtelotte to his father, Monroe L. Tourtelotte, was made in the latter part of December, 1889. The latter was not present in Colorado; did not see the note, nor was it forwarded to him. On his written instruction it was delivered to his attorney, L. C. Rockwell, Esq., by John F.

On the 31st of December Mr. Rockwell caused a notice to be served upon defendant, that on the 13th day of January, 1890, he would present the note for allowance as a claim against the estate, which was done. Various defenses or objections were urged against its validity which are not necessary to be considered in this connection, and the claim was rejected. An appeal was taken to the district court. The defenses set up and relied upon are: ·

First.—That the note was not made by Francina Hawkins.

Second.—That Maggie A. Hurd had never assigned and transferred the note in the usual and ordinary course of business; that neither Steele & Malone, John L. Tourtelotte nor plantiff in error had paid a valuable consideration for the note, and that if the note ever was executed by deceased it was void for want of consideration.

Third.—That while in the possession of Steele & Malone as indorsers the note had been by them filed as a claim against the estate,—trial had, resulting in establishing the validity of the note; that an appeal was taken to the district court by the defendant in error; a jury was impaneled, a trial entered upon, some days occupied in the introduction of testimony, and at its close and before the court had charged the jury as to the law, plaintiff, under sec. 166 of the Civil Code of 1887, abandoned the case, and the court

entered a judgment of nonsuit and for costs ; and that such adjudication barred the recovery of plaintiff in error.

To this third defense a demurrer was filed and sustained,— no exception taken, hence need not be further considered as a defense, but was necessary to be stated as a part of the history, as the facts will again be referred to in discussing the other defenses. Issues were made upon the remaining defenses, and trial had to a jury, resulting in a general verdict for the defendant on the 17th day of October, 1890. The court also submitted to the jury the following question for a special finding:

" Was the name of Francina Hawkins, at the end of the note, forged ? " To which was answered,—" Jury cannot agree.—F. D. Bailey, foreman."

Numerous errors are assigned. The first relied upon in argument arose upon the examination of the witness, N. S. Hurd, husband of the payee of the note. He was called by the plaintiff ; testified that he knew Francina Hawkins,— had in life known her some twenty-eight years. That she was his mother-in-law ; that he was present and saw her sign the note. After signing she delivered it to him, and he delivered it to his wife. This was all. Upon cross-examination the court allowed counsel of defendant, over the objection of plaintiff, to examine the witness at great length in an attempt to establish the defenses relied upon, or some of them. The next error relied upon was to the court allowing the defendant to read in evidence to the jury the record of the court in the trial of Steele & Malone against the estate. The fifth, sixth and seventh assignments were in the ruling of the court in admitting evidence on the part of the defendant of the transaction between Maggie A. Hurd, the payee, and Steele & Malone, to establish the fact that they were not *bona fide* purchasers and legal holders of the note.

There were several instructions given by the court to which exceptions were taken, and upon which errors were assigned. The only one necessary to be set out is the following:

Twenty-fifth.—"You are further instructed, that in determining whether or not John F. Tourtelotte became a *bona fide* holder for value of the note in question, you should consider the testimony given by the witness concerning the transaction which constituted him the purchaser of said note, and all the evidence concerning said transaction, and in connection therewith you may also consider the circumstances of there having been previous litigation regarding said note, the general appearance of the note, any marks or writing upon the same, if any, that would naturally attract attention and invite inquiry with reference to the validity of said note, or as to whether or not there were any defenses urged against the same, for the purpose of determining in your minds whether or not the said John F. Tourtelotte, before or at the time of said purchase, had notice or knowledge that defense would be interposed to said note, and whether or not he did purchase the same in good faith. And in determining whether or not Monroe L. Tourtelotte, plaintiff, is a *bona fide* holder for value of said note you may take into consideration the testimony of witnesses concerning the transaction between John F. Tourtelotte and himself, together with the circumstances surrounding the said transaction, for the purpose of ascertaining whether he received the same without knowledge or notice of such defenses interposed or to be interposed, and as to whether or not he in good faith purchased the same for value, and holds the same innocent of such defenses."

Mr. L. C. ROCKWELL and Mr. W. T. HUGHES, for plaintiff in error.

Mr. T. M. PATTERSON and Messrs. BROWNE, PUTNAM & PRESTON, for defendant in error.

REED, J.   Whether the signature to the note was genuine or a forgery was put directly in issue by the pleadings,—was the controlling issue. If found a forgery there was an

end of plaintiff's case; if found genuine other legitimate issues must of necessity be determined and found for the defendant to defeat a recovery. The direct question was propounded to the jury for a special finding. No finding was made, but a statement was returned that the jury could not agree, which was accepted by the court. A general verdict for the defendant was also returned, accepted, and a judgment entered upon it. We are clearly of the opinion that this was error. There was a mis-trial. The failure to find upon that issue was equivalent to a failure to find and agree upon any verdict in the case. No intelligent or intelligible finding could be made upon subsequent issues in which that issue was not involved and conclusive. Of the right and power of the court to order a special finding upon any fact involved, either upon his own motion or at the instance and suggestion of counsel, there can be no doubt. It is a power that has been exercised and unquestioned for ages under the common law practice. Coke on Litt. 228; 9 Rep. 12; *Rex v. Plummer*, 12 Mod. 628; Bac. Abridg., Verdict (D), and special provision for such a verdict is made by the Code, Sess. Laws 1887, sec. 199,—" In any case in which the jury render a general verdict, they may be required, by the court, to find specially upon any particular questions of fact to be stated to them in writing. * * * Where a special finding of facts shall be inconsistent with the general verdict, the former shall control the latter."

In *Patterson v. United States*, 2 Wheat. 225, it is said, " The rule of law is precise upon this point. A verdict is bad if it varies from the issue in a substantial matter, or if it find only a part of that which is in issue. The reason of the rule is obvious; it results from the nature and the end of the pleading. Whether the jury find a general or a special verdict, it is their duty to decide the very point in issue; and although the court in which the cause is tried may give form to a general finding, so as to make it harmonize with the issue, yet, if it appears to that court, or to the appellate court, that the finding is different from the issue, or is con-

fined to a part only of the matter in issue, no judgment can be rendered upon the verdict."

In *Sutton v. Dana*, 1 Met. (Mass.) 383, it was said:

" If the question submitted to the jury, and on which they were not agreed, had been as to any facts upon which the plaintiffs relied to maintain their action, most clearly no further proceedings could be had until that issue should be found by the jury."

It is needless to multiply authorities upon this point. It must be apparent that no finding favorable to plaintiff could be made upon any issue by a jury, a part of whom believed the note to have been a forgery, consequently no finding upon the other issues tried could be conclusive of the rights of the parties.

II. The order of introducing testimony, and latitude allowed in cross-examination, is greatly in the discretion of the court. In this case we think the discretion abused and prejudicial, not so much in allowing the defense to attempt to establish their contention at that time, but in effect, to allow the witness Hurd, in all matters aside from those on which he was examined in chief, to become the witness of the defense without being bound by his testimony, and for which they were not required to assume any responsibility, and where the plaintiff was deprived of the right of cross-examination. The rule is well settled, and when a witness is allowed to be examined on cross-examination on matters extraneous, not embraced in the direct examination, he is to be regarded as the witness of the party examining, and he is so far concluded by it as to prevent its contradiction. This rule is so well known and established that authorities are hardly necessary, but see 1 Greenlf. on Ev. § 445 ; and that the rule is well established in the supreme court of the United States, see *Phil. & Tren. R. R. Co. v. Simpson*, 14 Pet. 448, where it is said, at page 461, " These statements would have been admissible upon two distinct grounds, * * * secondly, upon the broader principle now well established, although sometimes lost sight of in our loose practice at trials, that a party

has no right to cross-examine any witness except as to facts and circumstances connected with the matters stated in his direct examination. If he wishes to examine him as to other matters he must do so by making the witness his own, and calling upon him as such in the subsequent progress of the cause." We do not deem this point as controlling or conclusive, or the error sufficient to warrant a reversal of this case, but as there will be a new trial we call attention to it so a repetition will be avoided.

III. The admission of the record, in the case of Steele & Malone in their attempt to have the claim allowed by defendant in error, for the avowed purpose for which it was introduced, viz.: to show that the matter was one of public notoriety, and allow the jury to infer knowledge by the plaintiff in error that would invalidate his title as a legal holder of the paper, was error. Such knowledge must have been affirmatively established by the defense, and could not be found by the jury inferentially, by proof of the existence of such facts. The most it could do was to cast suspicion upon the *bona fides* of the transaction. It was not claimed, nor could it successfully be claimed, that it was such an adjudication as could operate as a bar and conclude the plaintiff by way of estoppel.

First. There was no final judgment.

Second. There was no adjudication for the purpose of collecting the note,—it was not due. It was simply a proceeding to compel the administrator to allow the claim before its maturity.

Third. It is apparent that the suit was abandoned for want of proof of title to the paper in plaintiffs; that could not affect the payee or any subsequent innocent purchaser for value.

Fourth. It was of matters *inter alios acta*, and had no tendency to disprove plaintiff's title to the note. There was no proof of any knowledge on the part of the plaintiff, or his individual assignor, of any fact that would discredit the paper, or put the plaintiff to inquiry. All the proof prop-

erly admitted was as to the want of knowledge of any such fact, and it could not be overcome by proof that other parties knew, and consequently plaintiff should have known.

The defense was allowed an unprecedented and unwarranted range. The questions to be determined were few and simple.

First. Was the paper the note of deceased, or a forgery?

Second. Was the plaintiff a *bona fide* purchaser of the note for value before maturity, without knowledge of any fact that would discredit and invalidate it? And upon the answer to the last clause of the last question depended the right of plaintiff to go back and attack the note for want of consideration, and proof of the facts, rights and equities as between the payee and intermediate holders. It must at once be conceded that without proof of some knowledge on the part of the plaintiff of some fact that would invalidate the note, all proof of the existence of such fact, and all proof of intermediate facts were inadmissible, and upon the failure to prove such knowledge the testimony was inadmissible, and if admitted should have been withdrawn from the consideration of the jury.

It follows, that the court erred in instructing the jury that it could consider such litigation in determining whether plaintiff was a *bona fide* holder. The evidence, clear, conclusive and uncontradicted, is that John F. Tourtelotte bought the note for $9,200, and paid for it,—that he had no knowledge of the litigation concerning it, or of any fact that would invalidate it. It was also proved and uncontradicted that plaintiff bought the note from his son, paying $9,700 for it; that he was a non-resident,—did not see the note, and the delivery took place by indorsing it and its being handed to plaintiff's attorney; both bought the note before its maturity. In our view of the case no knowledge obtained by John F., nor any marks to cast suspicion upon the note that might have been observed by him, could be imputed to the plaintiff. John F. was the seller and indorser, not the agent; he was not bound to communicate any facts within his knowl-

edge, had he known any of disparagement. He was the indorser, and as such liable to his indorsee. Plaintiff might well, perhaps, have taken the note upon the indorsements of Steele & Malone, and John F. It is urged that if plaintiff had no actual knowledge impairing the validity of the note he was negligent; that he should have seen the note, and that had he done so, the marks and indorsements upon it were such as to excite suspicion and lead to investigation. We cannot agree with this contention. Had he made inquiries, and in fact learned all that could be known, he could have learned nothing to invalidate the note.

IV. Defenses to negotiable paper, like any other defenses, are to be established affirmatively by the party relying upon them. They cannot be established inferentially and arbitrarily by a jury, in the absence of all evidence. A suspicion or belief of want of good faith, unsupported by evidence, cannot be made the basis of a verdict.

The rule in this state in regard to commercial paper, wisely adopted in the interest of commerce and for the protection of purchasers, is announced by the Supreme Court in *Merchants Bank v. McClelland*, 9 Colo. 608, as follows:

"If there is nothing upon the face of a negotiable instrument, or in the written indorsement or assignment, to notify the assignee that the instrument was originally given upon an illegal consideration, (gambling debts excepted,) or obtained through fraud, the assignee who pays value therefor, and takes the same in good faith before maturity, may recover as against the maker. This is true, even though such assignee be in possession of facts or circumstances sufficient to arouse suspicion in the mind of a person of ordinary prudence, and though he is guilty of negligence in not first following up such information for the purpose of discovering the fraud or illegality to which the suspicious circumstances may seem to point." Followed and approved in *Coors v. German Nat'l Bk.*, 14 Colo. 202, and in *Rand v. Pantagraph Stationery Co.*, ante, p. 270.

The rule as above stated is more unrestricted and broader

VOL. I—27

than that in some of the states, notably, the state of New York, but is the rule of the federal courts. See *Bk. of Metropolis v. New England Bk.*, 1 How. 234; 6 How. 112; *Murray v. Lardner*, 2 Wall. 110; *Hotchkiss v. Bank*, 21 Wall. 354; *Brown v. Spofford*, 95 U. S. 474; *Swift v. Smith*, 102 U. S. 442; and is the rule in the great majority of the states.

The later decisions in the courts of England are in harmony with the American rule, as above stated. In *Bank of Bengal v. Mcleod*, 5 Moore, Indian Appeals 1; 7 Moore, P. C. C. 35, it is said: "The rule laid down in *Gill v. Cubitt*, 3 Barn. & Cress. 446, and *Down v. Halling*, 4 Barn. & Cress. 330, that the negligence of a party taking a negotiable instrument fixes him with the defective title of the party passing it, is no longer law." It is well settled that a party may be a *bona fide* holder notwithstanding the *mala fides* of his indorser. See 2 Rand. on Com. Paper, § 987; 1 Daniel on Neg. Insts. § 769; 1 Parsons, 261; *Masters v. Ibberson*, 8 Com. B. 100; *Ayer v. Tilden*, 15 Gray 178; *Dillingham v. Blood*, 66 Me. 140.

By the law merchant a purchaser is presumed to be a holder for value, and to have purchased in good faith any paper before its maturity, and this presumption must be overcome by competent testimony. Where there is no testimony impeaching the *bona fides* of the transaction of the holder, it is error to admit evidence of want of consideration, fraud in obtaining, irregularity in transferring, and the knowledge of defects or defenses by the intermediate holders or indorsers.

There was absolutely no testimony to show that the plaintiff was not a *bona fide* holder for value. All the testimony upon the transaction was in favor of its regularity and legality. There was no testimony to overcome the legal presumption, or to cast a suspicion upon it, hence all the instructions submitted upon the transactions prior to the title of John F., as well as those in regard to the consideration of the note, etc., were erroneous,—there was no basis upon which they could be predicated. There are several

other minor errors assigned which we do not find it necessary to examine.  Sufficient has been said to aid in the determination of the case upon a new trial.

The judgment will be reversed, and the cause remanded for a trial *de novo*.

*Reversed.*