Bissell, J.,
delivered the opinion of the court.
The foundation of the defense to this action was the alleged alteration of a note, executed by the appellant to his own order, and indorsed by him on the date of its execution and delivered to Rabb Brothers in settlement of a bill of goods which that firm had heretofore sold to the maker. The note was indorsed by Rabb Brothers, and discounted before maturity with the American National Bank of Denver, which passed the proceeds to Rabb Brothers’ account, and became under the law merchant bona fide holders for value.
Subsequent to the apparent maturity of the note, it was sent to the correspondent of the bank for collection, presented, but not paid. This suit was then begun. The complaint set up the making of a note, dated the 8th of February, 1892, as follows:
“Four months after date I promise to pay to the order of myself, nineteen hundred seventeen and 50-100 (1917.50) dollars, with interest thereon at the rate of six per cent per annum after maturity — for value received.
“ Cha’s. Mater.”
The plaintiff simply alleged the execution and delivery of the note, its transfer, and their title. The defendant answered, admitted the execution of the note, but alleged an alteration in a material part without his consent. It was averred that on the bottom of the paper on which the note was written, the following memorandum had been written and signed:
*327 “ It hereby agreed that after the expiration of four months, the above Cha’s Mater shall be privileged to have twelve months instead of four months on the above note.
“ Attest: Rob’t. J. Geiee.
• “ R. M. Dick.”
The defendant then averred at the time of the indorsement he wrote his name across the back of it in two places. The first was an indorsement of the note. The other was an indorsement of the note and contract, which extended on to the note as well as across the agreement of extension. Mater pleaded the execution of both papers at the same time and prior to the delivery to Dick, and the alteration of the paper by the tearing off of the memorandum. Mater did not otherwise plead any defense, nor did he set up a request for an extension of time, nor plead any premature institution of the suit. He relied solely and wholly on the legal effect of the alteration, whereby, as he now contends, the contract or promise to pay was destroyed. It is well in this connection to state some facts disclosed by the bill of exceptions which are not to be found in the abstract. The appellant relied on the legal proposition involved in the removal of the subsequent agreement of extension, if such it be, and deemed it wholly unnecessary to present any other portion of the record to our attention. Since we think some of the proof of very considerable significance and of great importance, we shall state it.
Rabb Bros, and Mater had been dealing together as wholesale vendors and retail purchasers of cigars and tobacco, and in the course of their transactions Rabb Bros, had sold Mater a bill of goods amounting to the sum named in the note. The goods were sold by Dick, who was their traveling salesman. According to direct testimony, Dick had instructions from the house with reference to the prices at which goods should be sold and the time to be allowed purchasers for payment. There is no dispute respecting the time 'on which the goods were bought. The memorandum of sale delivered to the ven *328 dee and the copy which was sent to the vendors both disclosed the sale to be on four months’ time. After the goods had been delivered, the salesman went to Mater for a settlement. The negotiations led to the execution of the note. It is in evidence that Dick was without any authority to settle the claim, or to give more time than that which was stated in the terms of the original sale, to wit, four months. According to the evidence, Dick was an agent with limited powers, and with no other actual authority than the right to settle the claim by taking a note for the time specified in the original sale. He was not a general agent, nor is there anything in the record to show that Mater had any right to rely on an apparent authority beyond that evidenced by his power to sell and the terms of the contract of sale as expressed in the memorandum. It did not appear that goods were ever sold on a year’s time; that there had been any negotiations between Mater and the creditors for such a credit, nor that Dick had any power to accept a note running twelve months. It will be observed the memorandum of extension was signed by Dick alone, and not by the maker, nor by the creditors, nor in their name.
A good deal of testimony was introduced respecting the manner in which the original note or memorandum was signed and executed. Mater testifies the indorsement extended on to the note as well as across the agreement of extension, and attempts to testify that if it did not so appear, it had been altered and erased from the back of the note. Competent and expert testimony was introduced to show that no alteration whatever had been made on the face or the back of the paper, and that a close inspection by the eyes, as well as by a glass, failed to disclose any erasure, and that an erasure without detection was impossible. We are unable to determine from the record whether the trial court accepted the latter contention, for there is nothing to disclose its views respecting this matter. The original note is preserved in the bill of exceptions and presented for our inspection. We are very frank to say we do not believe the note was altered *329 or any name or any writing erased therefrom. Mr. Mater and his clerk are evidently mistaken in regard to the form of the original indorsement, and have forgotten what the facts were about it. A very careful scrutiny of the paper leads us to an undoubting belief that nothing whatever has ever been erased from the face or the back of that note. It may therefore be taken as fact that there is no evidence of any alteration whatever on the face or on the back of the paper. If any alteration was made, it was the separation of the memorandum which Mater says was written at the bottom and signed by Mr. Dick from the balance of the note.
The simple issue is as to the legal effect of such an alteration of the paper. It must be conceded there are many reputable authorities which hold that the removal of a memorandum from the bottom of a note destroys the paper as the contract of the maker, though it was so negligently attached as to permit its removal without the possibility of detection. The negligence of the maker is held to furnish no protection to the title of a holder for value. In all'the cases which have been presented to our attention, the rule has been laid down, where the condition, if taken as a part of the note, would render it a nonnegotiable contract, the holder would only take title subject to any defenses available against the original payee. There is another line of authorities of equal repute, and possibly of equal volume, which adjudge the title of a bona fide holder for value good, where the note and memorandum were so negligently executed as to permit a separation without detection. If we did not deem ourselves concluded by antecedent adjudications of the supreme court of the state, we should unhesitatingly follow that line which holds the maker liable on his paper where he has so negligently executed it as to permit the separation of a memorandum which, had it remained, would vary, alter, or completely annul his liability on the instrument. This view seems to us to be recognized by the better authorities and by learned text writers. It is put on the principle that where one of two innocent persons must suffer, the loss must fall *330 on him who has furnished the opportunity. This is a complete answer to the appellant’s contention. He executed a promissory note in the ordinary form of commercial paper, affixed his name to it, indorsed it, and put it into circulation. There was nothing whatever incorporated in the note itself which would put the purchaser on his guard, nor was there anything in the manner or form of the indorsement which could attract the attention of the most careful and astute purchaser. The memorandum which provided for the extension was at the bottom of the instrument, and there was no reference to it in the note. Under these circumstances, we are quite of the opinion Mr. Mater should be held liable on his paper. We should incline to this opinion even though it was shown that the memorandum had been removed in bad faith by the payee, so long as the note came into the hands of an innocent holder who had paid a valuable consideration for it. Daniel on. Negotiable Instruments, vol. 2, sec. 1407; Phelan v. Moss, 67 Pa. St. 59; Zimmerman v. Rote, 75 Pa. St. 188; Harvey v. Smith, 55 Ill. 224; Brown v. Reed, 79 Pa. St. 370; Noll v. Smith, 64 Ind. 511; Cornell v. Nebeker et al., 58 Ind. 425; Capital Bank v. Armstrong et al., 62 Mo. 59; Robertson v. Hay, 91 Pa. St. 242; Palmer et al. v. Largent, 5 Neb. 223; Bachellor v. Priest, 12 Pick. 398; Isnard v. Torres et al., 10 La. Ann. 103.
The general doctrine expressed in these eases has undoubtedly been recognized by the supreme court. We regard the principle underlying these decisions as entirely analogous to those declared in the antecedent authorities. In determining which line we will follow, we are therefore very much concluded by the indicated opinion of the supreme court on cognate questions. Wyman v. Colo. National Bank, 5 Colo. 30; Merchants’ Bank v. McClelland, 9 Colo. 608; Coors v. German National Bank, 14 Colo. 202.
We are not compelled, however, to go quite to this extent, because, as we view it, the promise with reference to the extension, if such it may be termed, was never executed by the payee, nor by the creditors who were the vendors of the *331 goods, nor by any one having authority to act in their behalf. It was an independent promise, executed by the agent who drew up the paper, and unless he had authority to modify or vary the terms of the sale, his agreement could not affect the original obligation. There is nothing in the record which discloses a power on the part of Dick to modify the terms of the sale or to take paper for any other time than that on which the goods were sold. It is barely possible a different proposition would have been presented had the agreement been signed by the original vendors. We are very frank to say, however, our convictions respecting the law would remain unchanged. Mater executed a direct promissory note to pay a given sum of money at a fixed time and at an agreed rate. If he desired to qualify that promise in any way and make the qualification effectual, he was bound to incorporate the modification in his note, or to so execute his paper as to put an innocent holder on his guard. We know there are many authorities to the contrary, which proceed on the theory that the removal of the paper amounts to a forgery, and on proof the holder may not recover, even though he pay value. These decisions, in our judgment, do not accord with the general law governing commercial paper, and we are very decidedly of the opinion that where one of two innocent persons must suffer, the loss should fall on him who has put it in the power of another to defraud an indorsee, who innocently pays value for paper to which the maker has affixed his name.
In the present case, however, we do not regard the alteration as coming within the cases which adjudge an altered note invalid in the hands of an innocent holder. Take the memorandum away, the note still remains a promise to pay a fixed sum of money for a valuable consideration with a definite rate of interest and at a definite time. Of course, the time expressed in the original paper is four months. If the memorandum is a part of it, then the note would be for twelve months if the option should be demanded. This statement, of course, is on the hypothesis that Dick pos *332 sessed authority to vary the terms of the sale. It must be remembered, however, there is nothing in the record to show that Dick had any such authority. The memorandum was signed not by Rabb Bros., who sold the cigars to Mater, and on whose behalf the order was taken to his knowledge. Under these circumstances, we do not believe the case comes at all even within the extreme authorities which would hold the note invalid in the hands of an innocent purchaser. It has been decided that if the modification of the note is by an independent promise of the payee, it will not vary the character of the instrument, and the holder may sue on the original promise, notwithstanding the alteration. Benedict v. Cowden, 49 N. Y. 396; Odiorne v. Sargent, 6 N. H. 401; Dow v. Tuttle, 4 Mass. 414; Krouskop v. Shontz, 51 Wis. 204.
There is a very grave question whether this case does not fall within the four' corners of those decisions. As we view it, there is an impregnable basis on which to put this decision. There is no specific contract on the part of Dick or Rabb Bros., whereby Mater acquired the right to twelve months’ time to pay that paper. It was not agreed that he should have twelve months, nor was there anything in the original contract which indicated that his time should run to that limit. The indorsement is that he shall have the privilege of twelve months. We take it this means, if it means anything, that he had the option to take twelve months in which to pay the paper, instead of the four nominated in the instrument itself. Under these circumstances, the paper still remained a promissory note, payable to his own order for a specific sum, and bearing a definite rate of interest. If the twelve months is to be incorporated into the note, it would stand as a promise on his part to pay $1,917.50, with interest at the rate of six per cent after maturity in one year from February 8, 1892, instead of within four months from the same date. It therefore follows the note was a negotiable promissory note, executed by Mater for a valuable consideration, by him indorsed and put on the market before maturity, and acquired before maturity by the appellees, who *333 were indorsees and who brought suit. The instrument was still Mater’s note for an unquestioned sum, bearing an undoubted rate of interest, and payable to whomsoever might hold it. The alteration, if conceded, did not affect or destroy the American National Bank’s title, but it simply postponed the day on which suit could be brought. If this be conceded, then the matters set up by Mater constituted no defense. He did not plead in abatement of the action that it was prematurely brought, neither did he plead his election to take the twelve months provided for by the paper, and, without an election on his part, there can be no question the note fell due four months from its date, and the holder was entitled to bring suit, subject, if at all, to his demand for the stipulated extension. His plea then tenders no defense. But we cannot regard this as a condition so material to the promise of the maker as to defeat a recovery without both plea and proof of the exercise of the election. We think the present case, under its peculiar facts and circumstances, justifies the application of the rule laid down in the authorities which have been cited. The force and effect of such a condition and of such an alteration is discussed in the State v. Stratton, 27 Iowa, 420. That authority, with many others, undoubtedly recognizes the rule to be different in those cases where the condition in no manner affects the legal character of the instrument or gives it any different effect, or any new operation. We should so regard the condition attached to this note, even though it had been executed by Ilabb Bros. It was not an absolute promise that the note was to be extended for twelve months, neither did it make the note executed by Mater a twelve months’, as contradistinguished from a four months’, instrument. The most that can be contended for it is that it gives an option, which in no manner affects the original promise, and without a demand at the time required bjr the terms of the original note, as well as by the terms of the extension, left the note unimpeachable in the hands of a Iona fide holder.' When, the appellant *334 failed to both plead and prove the exercise of his privilege, he lost the right to defend because of the alteration.
Aside from this consideration, there is another already suggested, which is equally controlling. The condition was no part of the note. It was not executed by Mater, nor was his note executed on that condition. The agreement was not executed by the payees, but by an agent who had no authority to make it, and it was therefore nugatory. Had it remained at the bottom of the instrument, the purchaser of the paper before maturity would have taken good title, unless Mater could plead and prove Dick’s authority to execute it. In our judgment, the memorandum was not the agreement of the payees. The condition, therefore, whatever it may have been, or however it may have been construed, in no manner tended to modify or control the original promise, and the note signed remained a promise to pay within four months, and when indorsed and delivered became, like any other commercial obligation, unimpeachable, because of any matters pleaded or proven. We therefore conclude the condition attached to the note was not of the class called material by the books, even in those cases which adjudge an altered note unenforcible against the maker, regardless of his negligence.
The judgment is right and ought to be affirmed.

Affirmed.