## No. 11,763.

ITALIAN AMERICAN BANK OF DENVER, ET AL. *v.* CAROSELLA.

Decided March 21, 1927.   Rehearing denied April 11, 1927.

Action for money judgment for misappropriation of a bank draft. Judgment for plaintiff.

### *Reversed.*

### *On Application for Supersedeas.*

1. APPEAL AND ERROR—*No Judgment.* Although the record contains no formal judgment, the parties having assumed that there was one, the appellate court may consider the case upon such assumption.

2. BANKS AND BANKING—*Draft—Due Course—Credit.* Where a national bank acting as clearing agent for a state bank received from the latter a draft without notice or knowledge of any infirmity, it became a holder in due course, and could properly credit the amount thereof on an indebtedness owing to it from the transferring bank.

3. BILLS AND NOTES—*Infirmity—Notice.* Where one bank acquires from another a draft regular upon its face, to defeat the transfer there must be evidence of actual knowledge of the receiving bank of an infirmity or defect, or knowledge of such facts that its action in taking the draft constituted bad faith.

4. BANKS AND BANKING—*Election of Remedies—Estoppel.* Plaintiff having petitioned the bank commissioner for allowance as a preferred claim of the amount of a draft endorsed to the insolvent bank, and not asking for a review of the order disallowing the claim as preferred, could not in a subsequent action assert that the draft was left with the insolvent bank for collection and not sold to it.

214

5.    *Insolvent Bank—Claim—Judgment.*  The allowance by the bank
      commissioner of a claim against an insolvent bank operates as a
      judgment subject to the same rules that would be enforced relative
      to the judgment of a duly constituted court.

6.    APPEAL AND ERROR—*Findings—No Evidence.*  Findings and judgment
      of a trial court will be reversed on review where there is an
      entire absence of evidence to support them.

*Error to the District Court of the City and County of
Denver, Hon. George F. Dunklee, Judge.*

Mr. FRANK C. WEST, Mr. LAURENCE W. DeMUTH,
Messrs. FILLIUS, FILLIUS & WINTERS, for plaintiffs in
error.

Mr. WILLIAM H. ANDREW, for defendant in error.

*Department Two.*

MR. JUSTICE CAMPBELL delivered the opinion of the
court.

THIS is an action by the plaintiff Carosella against
the Italian American Bank of Denver, a corporation,
Grant McFerson, state bank commissioner of Colorado,
E. W. Pfeiffer, special deputy state bank commissioner,
and the American National Bank of Denver, a corpora-
tion.  Its object is to obtain a money judgment against
the two banks and the state bank commissioner because
of the wrongful appropriation by the banks of his bank
draft in the sum of $2,701.61 and interest, and to have
the same adjudged to be a preferred claim against the
Italian bank, whose assets and affairs are in charge of
the state bank commissioner upon the bank's failure.
The judgment is against all of the defendants and the
preference claim was allowed.  All of the defendants are
here with their writ of error to review that judgment.

The parties request final decision on the application for a supersedeas, with which we would not be disposed to comply were it not that the affairs of the insolvent state bank defendant in the hands of the state bank commissioner cannot be finally settled until this controversy is determined. Our reluctance in now disposing of the case, which has been overcome for the reason stated, is due to the imperfect, and uncertainties in the, transcript of the record. The action neither in form nor substance is one upon contract but the right to recover is based upon an alleged conspiracy by the two banks formed with the intent to cheat and defraud the plaintiff of the draft and proceeds thereof and, therefore, both banks are liable as wrongdoers; and, as the defendant Italian bank's affairs are being liquidated by the state bank commissioner, the judgment against the banks should be, as it was made, a preferred claim against the assets of the Italian bank in possession of the bank commissioner. This was done upon the theory of the plaintiff, and sanctioned by the finding of the trial court, that the plaintiff deposited with the Italian bank for collection only a bank draft drawn upon a Pittsburg bank for the sum stated and therefore the draft itself and its proceeds constituted in the hands of the bank commissioner a trust fund which character was impressed upon it at the time that the draft was left for collection with the Italian bank, which was three or four days before its failure, and before the bank commissioner took possession of its assets. Pfeiffer was made a defendant because he was in active charge of the affairs of the insolvent bank. There really, however, are only three defendants—the two banks and the bank commissioner in his official capacity. Each of the defendants filed a separate answer, all of them in appropriate language putting in issue the allegations of the complaint of wrongful conduct. After the court had overruled the separate demurrers upon the various grounds of each of the parties defendant, the defendants filed separate answers.

In each answer one of the defenses is that when the plaintiff presented to the Italian bank the draft in question, the bank purchased the same from plaintiff for full value and paid the plaintiff therefor in money and credit the full face amount thereof, of which sum $87.50 was paid to the plaintiff in money and $2,614.11 in the form of a demand certificate of deposit issued by the bank and payable to the order of the plaintiff. Another defense of each of the defendants is that the plaintiff, after the failure of the Italian bank and while its affairs were in charge of the bank commissioner, presented to the latter his sworn claim in writing against the Italian bank upon the certificate of deposit just mentioned, and delivered to the commissioner in connection with the verified claim the certificate in question, and the same was thereupon allowed by the bank commissioner as a claim of a general creditor of the Italian bank in the full sum of the certificate of $2,614.11, to be paid as the claims of other general creditors, but the claim for a preference was not allowed. That written notice of the approval of the claim and rejection of the preference was served upon the plaintiff, and no notice of review by him in the district court was filed with the bank commissioner within the thirty days prescribed by statute after such decision was announced, or at all, as might have been done under section 2736, C. L. 1921. Therefore, defendants say that by accepting this certificate of deposit, together with the sum of $87.50 in money, in full payment of the purchase price of the draft, and by presenting his sworn claim upon this certificate and by procuring the approval thereof, as stated, the plaintiff is estopped to maintain this action against the bank commissioner. The American bank, after pleading as separate defenses substantially the same as already mentioned as having been pleaded by the bank commissioner, sets up as a separate third defense that the Italian bank duly endorsed, transferred, assigned, and delivered to it the draft in question, and

thereupon the defendant American bank purchased the same for value before maturity, and paid the face value thereof and received the same in due course of business, without notice of any alleged equities in favor of the plaintiff, and thereby became and was the holder in due course of the draft and fully entitled to collect the same and to all the proceeds thereof. Other special defenses of the parties are not in our view material upon this review and will not be considered. The affirmative matters of the separate answers of the defendants as just summarized were traversed by the plaintiff's replication. The trial thereafter was had before the court and a jury. At the close of all of the evidence the plaintiff moved the court to direct a verdict in his favor and the defendants and each of them moved the court to direct a verdict in their favor. The court seems not to have passed directly upon these motions but held that the law as applied to this case under the motions required the court to pass upon the law and the facts as though the same were tried to the court without a jury, and thereupon discharged the jury from further consideration of the case and proceeded to make findings of fact in favor of the plaintiff. The language of the third specific finding, which is supposed or assumed by the parties to be the decision of the court, is in the following language: ''The court finds the issues in favor of the plaintiff and against the defendants, both as to the facts and law and the equities of the case for the sum of $2,614.11 and costs and that said judgment be a preferred claim against the defendant, the Italian American Bank of Denver and Grant McFerson as state bank commissioner of Colorado and E. W. Pfeiffer, special deputy state bank commissioner, having charge of the affairs of the said bank, and the payment of the judgment herein by said commissioners having charge of the affairs of the said the Italian American Bank, shall operate as a full satisfaction of said judgment.'' In connection with

the finding the trial judge added that his views and reasons for the judgment were given at the conclusion of the trial on the motions by respective counsel for a directed verdict, and therefore appear in the record. We find nowhere in the record any formal judgment of the court. It seems to have been assumed by all of the parties, however, that this third finding of fact is in effect a judgment or decree. Without so deciding, but upon the assumption of the parties that it is a final decree, we proceed to a consideration of the essential and controlling issues of law and fact in the case.

Notwithstanding the specific findings of fact upon most, if not all, of the issues of fact which were in favor of the plaintiff, we are forced to the conclusion that the court misconstrued the probative and legal effect of its findings of fact and applied thereto inappropriate principles of law and furthermore had no facts before it that justified its decree. The cause of action in the complaint, as already stated, is not on contract, express or implied, but is for a fraud alleged to have been perpetrated upon the plaintiff by the Italian Bank of Denver, one of the defendants, the fraud being that when plaintiff presented to that bank for payment thereof a bank draft drawn on a Pittsburg bank, his object being to get the proceeds at once, the Italian bank, after refusing to buy the draft, with intent to cheat and defraud the plaintiff thereof and of its proceeds, prevailed upon him to leave the draft with it for collection for his use and benefit, in which fraud it is charged the defendant American National Bank "acting in the premises co-ordinately" and for the joint use and benefit of the two banks and in pursuance of the same fraudulent scheme, thereafter collected the full amount of the draft and retained the proceeds and refused to account to plaintiff therefor.

If these two banks by their conspiracy or co-ordinate action and for a wrongful purpose, got the proceeds of this draft, they are, of course, jointly and severally

liable. There is not a particle of evidence, and nowhere in his testimony does the plaintiff say, that the American bank had any knowledge or notice whatever of plaintiff's transaction with the Italian bank when he presented this draft to it. We have diligently read the entire evidence in the transcript, and the testimony of the plaintiff himself repeatedly, and fail to find any proof of the alleged joint fraud. Before reciting the testimony it is well to say that it is doubtful if the complaint states any cause of action either in tort or on contract. But waiving that infirmity we shall summarize the evidence of the plaintiff himself, which to our minds is conclusive against his right of recovery either as against the American bank or the state bank commissioner.

He first presented this draft to the American National Bank and asked to have it cashed at its face value. Plaintiff was unknown to the bank and he was told to get an endorser. He obtained the endorsement of W. H. Andrew, who was the attorney of the plaintiff in adjusting a fire loss under a policy of a Pittsburg fire insurance company, and who is the attorney of the plaintiff in this action, and the draft to plaintiff as payee was for the loss sustained. When the plaintiff returned to the American bank and again presented the draft endorsed in blank by himself and Mr. Andrew, the American bank declined to cash or advance any money on it. Plaintiff thereafter presented the draft to the defendant Italian American Bank of Denver for payment, but, as he says, the bank declined to buy it and he then acquiesced in the importuning of the bank and left it for collection. The evidence is in conflict as to what occurred during the first part of this interview, at least, and as to what the final arrangement between the plaintiff and the Italian bank was when he left the draft with it. On the back of it were endorsed the names of plaintiff and Mr. Andrew. Andrew accompanied the plaintiff when this

draft was presented to the Italian bank for payment. They testify that the president, Frazzini, who died before the trial, to whom the draft was presented, declined to buy it, but the plaintiff and Andrew say that plaintiff then left it for collection. The records of the bank itself disclose that there was a fixed method of bookkeeping by the bank when a draft was presented or taken for collection only. Among other things this method included a written memorandum consisting of certain data on slips showing specifically that the draft was presented for collection. There were an original and three copies of this slip; one of which was attached to the draft, another was given to the depositor, and the other two were preserved in the bank records. Neither on the books, nor on the draft, was any notation that this draft was left for collection. To the contrary it was handled, so far as the books show, as a purchased draft. These bank records do not disclose that the draft was left for collection although the testimony of plaintiff and Andrew is to the contrary as to the nature of the transaction. In our view there is no necessity of determining whether this draft was left for collection or was sold to the bank. But if its resolution is essential, all the written evidence in the case supports the claim of the defendants in this action that the Italian bank purchased this draft. There are many corroborating circumstances leading in the same direction. Not only are the books of the bank against the plaintiff on this point, but it is a singular circumstance that Mr. Andrew, according to his own testimony, says that his only object in going with the plaintiff to the bank was to get the amount of $87.50 which the plaintiff owed to him as a fee or part of his fee in adjusting the fire loss. Mr. Andrew testifies positively that Frazzini, before the transaction was completed, took the plaintiff aside and he does not know what arrangement they made about the draft, although he says that at first the object of the plaintiff was to get

the entire proceeds of the draft, while his own object was to get his fee, but while Frazzini and the plaintiff were completing the transaction he was engaged in conversation with some other person who was in the bank, and paid no attention to the matter, further than to see that he got his fee. What actually took place between the bank and the plaintiff was that the bank advanced in money the sum of $87.50, and plaintiff signed no acknowledgment of its receipt, and did not give to the bank a note therefor, although he said it was a loan, and this sum went to Andrew for his attorney's fee, and the balance of the face value or amount of the draft, which was $2,614.11, was included in a demand certificate of deposit signed by the bank and made payable to the order of the plaintiff. Plaintiff says he thought the certificate of deposit was 'a receipt and when, as he says, he showed it to Andrew, the latter did not enlighten him. Andrew says plaintiff did not show him the certificate. Since, however, the finding of the trial court was that this draft was left by the plaintiff with the Italian bank for collection, for the purpose of the case this may be conceded, but, notwithstanding this, the judgment of the trial court cannot stand as we proceed to show.

The next day after the Italian bank obtained possession of the draft, in regular course, it presented the same so endorsed by plaintiff and Andrew to the defendant American National Bank, which acted as the clearing agent of the Italian bank, and the account of the Italian bank with the American National Bank was credited with the face value of the draft. There was nothing whatever on the face of the draft to indicate that it had been left with the Italian bank for collection. On its face it disclosed a purchase by the bank. There is not a particle of evidence in the record, even by inference, that the American National Bank had any knowledge of the transaction between the plaintiff and the Italian bank other than what the draft on its face disclosed when the Italian bank deposited the same with the Amer-

ican bank and received credit upon its account for the same. The American bank in due course then proceeded to transmit the draft through the regular channels to the drawee for payment. Three days after the draft came into the possession of the American bank the Italian bank failed and its assets and property came into the possession of the state bank commissioner and ever since that time he has had charge of its affairs under our statute and it is still in process of liquidation. When the plaintiff learned that the Italian bank had failed he telegraphed to the drawee bank at Pittsburg a stop payment order. Afterwards in some way this stop order was removed and the draft was paid by the drawee. At the time of the failure of the Italian bank it was indebted to the American National Bank upon a note that was past due for a large sum of money in excess of the amount of the balance which the Italian bank had in the American bank, and immediately the American bank applied the Italian bank's balance on the note which it owed to the former. There is not any evidence in the record at all that the American bank knew, if such were the fact, that the Italian bank had taken this draft for collection, or of any infirmity attaching to the draft which it thus credited to the account of the Italian bank. The American bank acquired its rights in this draft without knowledge of any infirmity. It was an innocent purchaser for value. It was not guilty of bad faith. The law surrounds negotiable paper with certain safeguards which cannot be ignored by the courts. Our own decisions, upon the undisputed facts here, are against the plaintiff. The American bank is a holder in due course. This draft was regular upon its face. The American bank became the holder before it was overdue; the same was taken in good faith and for full value. It had no notice of any infirmity or defect in the title of the person negotiating it. See *Wyman v. Colorado National Bank,* 5 Colo. 30. This case is also authority for the banker's

lien in favor of the American National Bank which justified it in applying the balance in the account of the Italian bank on the demand note which the Italian bank owed it. See also *Merchants' Bank v. McClelland,* 9 Colo. 608, 13 Pac. 723, and cases there cited; *Coors v. German National Bank,* 14 Colo. 202, 23 Pac. 328, 7 L. R. A. 845; *Wedge Mines Co. v. Denver National Bank,* 19 Colo. App. 182, 73 Pac. 873; *Burnham L. & I. Co. v. Sethman,* 64 Colo. 189, 171 Pac. 884, L. R. A. 1918F, 1158. Our latest case is *Hukill v. McGinnis,* 70 Colo. 455, 202 Pac. 110. The following quotation from the opinion in that case is pertinent here: "There is no evidence in the record that defendant in error had notice of want or failure of consideration, or that he took the note in bad faith. Suspicions and surmises cannot be made to take the place of evidence. To defeat the note, there must be evidence of actual knowledge of the infirmity or defect, or knowledge of such facts that the action of the indorsee in taking the note constituted bad faith. There was no circumstance attending the sale and purchase of the note which would justify the conclusion that it was taken by the defendant in error in bad faith. The presumptions of law are in favor of the defendant in error."

The leading case in the Supreme Court of the United States to the same effect is *Bank of Metropolis v. New England Bank,* 1 Howard, 234, 11 L. Ed. 115. In *Vickrey v. State Savings Association,* 21 Fed. 773, it was held under the heading of "Banking Deposits for Collection," that where a negotiable instrument, indorsed and delivered in blank to a bank, though in fact only for collection, is sent by it to another bank for collection and credit before maturity, and the latter receives it without notice that it does not belong to the former, it may lawfully retain the proceeds of the collection to satisfy a claim for a general balance against the other bank, if that balance has been allowed to arise and remain on the

faith of receiving payment from such collections pursuant to a usage between the two banks. This balance was so allowed to arise and this usage prevailed as to the American and Italian institutions. We do not find that the American National Bank, upon the evidence in this record, which is uncontradicted, can be held liable, and the judgment against it is wrong and must be set aside.

Assuming again for the purpose of this case, but not so deciding, that the plaintiff left this draft with the Italian bank for collection, though all the written evidence is contradictory of that assumption, plaintiff's subsequent conduct prevents him from asserting any such claim in this action, either against the American bank or the bank commissioner. But it is said that the plaintiff is an ignorant man and cannot read writing, although he is able to sign his name. He may be an unlearned man in that particular, but his testimony shows that he is by no means as ignorant as his counsel would have the court believe. He acted with unusual promptness in sending the stop order on this draft after he learned of the failure of the Italian bank. No claim is made and no intimation appears in the case that he received any legal advice what course to pursue in such circumstances. Nearly one month after he knew that the draft had been honored by the drawee and that the American bank had applied the proceeds thereof to the indebtedness of the Italian bank to it, the plaintiff presented the certificate of deposit which he had received from the Italian bank at the same time he received the $87.50 in money, the two items aggregating the face value of the draft, and filed his claim with the bank commissioner against the Italian bank for the full amount of this certificate of deposit in the sum of $2,614.11. No claim of a preference appears on this filing, though the bank commissioner, possibly as he did with all claims not entitled to a preference, approved the claim to be paid as are other general creditors but refused to make

it a preferred claim, and thereupon, as our statute provides, served a notice to that effect on the plaintiff in this action. The plaintiff did not see fit, as he might have done, to have a review of the commissioner's decision in the district court, but within the period of six months, which the statute allows to bring a suit in the district court when a claim is rejected by a bank commissioner, he brought this action.

Our conclusion on this branch of the case is that even conceding that the draft was left with the Italian bank for collection, still, with full knowledge upon his part, and there is no claim that he was ignorant of his rights under the law, when plaintiff filed his claim, based upon this certificate of deposit which he had received from the Italian bank when he endorsed in blank his draft to that institution, the legal effect thereof, while it may not strictly or technically speaking operate as an estoppel against him in this action to assert that the draft was left by him for collection and was not sold, the doctrine of election of remedies which is closely akin to estoppel, sometimes being termed a quasi estoppel, is the one to be applied, and is attended with like results. In 10 R. C. L. p. 703, the author, supported by a long list of cited cases, states it to be a general rule that if one having a right to pursue one of several inconsistent remedies, makes his election, institutes suit, and prosecutes it to final judgment or receives anything of value under the claim thus asserted, or if the other party has been affected adversely, such election constitutes an estoppel thereafter to pursue another and inconsistent remedy. "And where the right in the subsequent suit is inconsistent with that set up in the former suit, as distinguished from a merely inconsistent remedy, the party is estopped though the former suit may not have proceeded to judgment." Under our statute the allowance by the bank commissioner on the certificate of deposit as a claim against the insolvent Italian bank operates

as a judgment and the same rule should be applied that would be enforced as if it was the judgment of a duly constituted court. It is too plain for argument that in this action now under review the plaintiff has taken a position in direct conflict with the position which he took in the proceeding before the bank commissioner. The parties are the same and the questions involved are exactly the same. Plaintiff should not be permitted under this doctrine of election of remedies now to pursue a remedy so inconsistent with that which he voluntarily and knowingly adopted before the bank commissioner.

The district court, appreciating the inconsistent action of the plaintiff, was apparently influenced in holding against the estoppel as pleaded by the banks because the American bank was not put in any worse condition or in any way misled or deceived by the fact of this draft having been deposited in the Italian bank in the way it was. The trial court stated that the case to its mind would be entirely different if the evidence showed that the draft had been taken to the American National Bank and presented for payment and was cashed and the full amount was paid out without any notice that it was being handled as a claim or trust fund, but simply cashed on the strength of the fact that the Italian bank had possession thereof. The trial court was in error not only in its view of the manner the draft was presented, but in saying that the American National Bank was not put in any worse condition or misled by the fact that the draft was deposited in its bank by the Italian bank in the way that it was. The court must have overlooked the fact that when the draft was left with the American bank, it credited the same to the amount of its full face value on the account of the Italian bank. If the judgment now under review is sustained the American bank would suffer a loss to the amount of the value of the draft.

We have searched this record in vain to find a particle of support for the sixth finding of fact by the trial court that the American National Bank had notice that this draft had been left by the plaintiff with the Italian bank for collection. The sixth finding reads: ''The Court finds that The American National Bank of Denver had notice from the plaintiff concerning this draft, and that he was presenting the same for collection, as per the testimony herein, at the time the plaintiff presented it to the said American National Bank and the said bank requested an indorser thereon, and the court holds that said notice was sufficient notice to the defendant, The American National Bank of the fact that this plaintiff was the owner of this draft, and that it was being handled for collection.'' True it is, that the American bank, when plaintiff presented the draft to it, knew that plaintiff was the owner or purported to be the owner. There is not a syllable of evidence by the plaintiff himself or by any other witness that at that time the American bank knew or supposed that the draft was being handled for collection. On the contrary, the plaintiff presented his draft to the American bank for the purpose of selling it and not for collection, since he wanted to get at once money to pay Andrew his fee and the balance he wanted for himself. Plaintiff himself testifies, and in this he is corroborated by Andrew, that when plaintiff presented this draft to the Italian bank, after he had failed to get it cashed by the American bank, he wanted the cash for it and did not at first even suggest that he desired to leave it for collection. In these circumstances the natural presumption would be that such notice, if any, as the American bank had when the plaintiff presented the draft to it for payment, was notice that it was being handled, not for collection, but for sale. There is not the slightest evidence that any suggestion was made to the American bank or any statement made that would lead it to believe, when it gave credit on account to the Italian bank, that the draft was being handled for

collection only. It was several days after the Italian bank had deposited the draft, endorsed by itself and by Andrew and the plaintiff, with the American bank and received credit on its account for the amount thereof that plaintiff first notified the American bank that his deposit of the draft with the Italian bank was only for collection. The American bank's rights had attached before such notice. The case really is not one where there is a conflict in the evidence, but there is an entire absence of evidence that the American bank ever had notice before it purchased this draft that it was being handled for collection.

It follows that the decree of the district court was wrong. Application for supersedeas is denied, decree is reversed and the cause is remanded with instructions to the trial court to set it aside and enter a judgment dismissing the action. As plaintiff already has an allowance by the bank commissioner for the entire amount on the draft to which he is entitled, there is no necessity for awarding judgment in this action therefor.

MR. CHIEF JUSTICE BURKE, MR. JUSTICE ADAMS and MR. JUSTICE BUTLER concur.