307 P.2d 94

**WILHORN BUILDERS, Inc., a corporation, and Mildred J. Sligh, a single woman, Appellants,**

v.

**CORTARO MANAGEMENT COMPANY, a corporation, Appellee.**

No. 6138.

Supreme Court of Arizona.

Feb. 5, 1957.

Hall, Catlin & Molloy, Tucson, for appellants.

Hymen D. Goldberg and Lawrence Ollason, Tucson, for appellee.

PHELPS, Justice.

This is an appeal from a judgment in favor of the plaintiff, Cortaro Management Company and against the defendants, Wilhorn Builders, Inc., and Mildred J. Sligh, and from each provision thereof. The parties will be hereinafter designated as the seller (Cortaro Management Company) and the buyer (Wilhorn Builders, Inc.) and Mildred Sligh (Mildred J. Sligh, president and agent of Wilhorn Builders, Inc.).

This case involves an action by the seller against the buyer on a contract for the sale of land. The written contract which is the subject of this action was entered into on January 2, 1952. It called for the sale of approximately one hundred and twenty acres of land for a total purchase price of $18,625, $5,000 of which was paid at the time of the execution of the contract. The balance was to be paid in annual installments of $2,725 each, plus interest on the unpaid balance at six per cent, payable on December 21 of each year thereafter until fully paid. The seller agreed to convey to the buyer upon payment of each $2,725 and

accrued interest, a parcel consisting of twenty acres, commencing with the most westerly twenty-acre parcel of the one hundred and twenty-acre tract. The contract is silent as to which party had the duty of providing the legal description and deed for each twenty-acre conveyance. The contract did provide for costs, expenses and reasonable attorney's fees in favor of the prevailing party if suit was brought to enforce or cancel the agreement.

On January 7, 1953 the buyer made the payment which was due December 21, 1952. The payment consisted of $2,725 to be applied to the principal and $803.88 interest, which paid the interest up to January 2, 1953. The seller did not deliver a deed for the westernmost twenty acres at that time, nor did it prepare such a deed or secure a legal description for the deed. The buyer, as a matter of expediency, incurred the expenses of $183.10 in securing the survey for the legal description for the deed, as well as the actual drawing thereof. It is the buyer's contention, with which we agree, that this cost should be borne by the seller.

The next contract payment was due on December 21, 1953, although it was not made on that date. A controversy arose between the parties as to the expenses for the previous twenty-acre parcel and as to whose duty is was to have the deed to the next twenty-acre parcel prepared. As a result the second deed was prepared by the seller and it was deposited with the escrow agent on March 6, 1954. The seller paid the expense for procuring the description for this parcel.

On March 20, 1954, the buyer tendered the sum of $3,194 as and for the principal and interest due December 21, 1953, on the theory that the buyer was entitled to deduct the costs of survey, and for preparation of the prior deed and that such tender would be sufficient. This tender was refused as being late and not in the correct amount. On the same date the seller brought this action in the Superior Court of Pima County to recover the December 21, 1953 installment. The buyer answered and pleaded in defense that the seller failed to place the twenty-acre deeds in escrow with a policy of title insurance. In addition, the buyer contended that it was entitled to offset the expenses of surveying the land for a legal description of the first twenty-acre deed and preparation of the deed itself.

At the time of the filing of this suit more than thirty per cent but less than fifty per cent of the total purchase price had been paid, and it was properly stipulated that a forfeiture could not have been declared prior to April 20, 1954, under the provisions of section 71–126, A.C.A.1939 (now sections 33–741, 33–742, A.R.S.1956). On August 4, 1954, the seller moved to amend its complaint to seek forfeiture of the buyer's interest rather than to recover the unpaid purchase money installment. This motion

to amend was resisted by the buyer on the grounds that the seller had conclusively elected its remedy in suing for the purchase money installment of December 21, 1953, and was estopped to change its position. The trial court granted the motion to amend and the amended complaint was filed September 22, 1954. The amended complaint added Mildred Sligh as a party-defendant.

The trial court, sitting without a jury, granted judgment in favor of the seller, cancelling and forfeiting the buyer's interest in the contract and declaring the seller to be fee simple owner of all the land in question, except the land described under the exception described therein, and awarding all sums paid under the contract as liquidated damages.

Appellant has presented a number of assignments of error for our consideration but we believe the case may be disposed of by a consideration of only one question raised, i. e., did plaintiff's act of bringing an action on March 20, 1954, to recover the installments and interest due under the terms of the contract on December 21, 1953, constitute an irrevocable election of its remedies and substantive rights under the terms of the contract.

In order to answer this question we will first look to the terms of the contract between the parties. So far as here material it provides:

"* * * Upon any default on the part of the buyer of any of the terms, conditions or covenants herein contained and by him to be kept and performed, the seller may, at his own sole option and discretion either (1) forfeit and terminate this contract, in which event the seller shall declare this contract forfeited, and all rights of the buyer hereunder shall thereupon cease and terminate and all sums of money theretofore paid hereunder shall be forfeited to and retained by the seller as liquidated damages, and the buyer shall immediately deliver to the seller peaceful possession of said premises, and the seller may forthwith re-enter said premises and all thereof and remove all persons therefrom, and withdraw from escrow forthwith the abstract of title or policy of title insurance and deed hereinabove provided for, or (2) the seller may treat this contract as continuing, and may enforce the same either by specific performance or other appropriate remedy. Waiver of one or more defaults by the seller shall not constitute a bar to declare future default or defaults, nor shall an election to treat the contract as continuing constitute a bar as to the right to declare any future default or defaults, and upon the occurrence of such future default or defaults, to again elect as to the remedy. * * *"

The rights and remedies of the parties in the event of default by the purchaser are above defined in clear and unambiguous language, i. e., that in event of default by the buyer, the seller may either forfeit and terminate the contract, in which event he shall declare the contract forfeited, etc., or he may treat the contract as continuing and may enforce it by specific performance or other appropriate remedy.

On March 20, 1954, the seller brought its action to recover the installment and interest due on December 21, 1953, and by so doing declared to the buyer that he elected to treat the contract as continuing; that at that time at least, it wanted the money then due and that it did not want the land. We are of the view that this constituted a conclusive election of substantive rights. We recognize that the courts are not in harmony as to what constitutes an election of remedies. A large number of courts hold that where more than one remedy is available to a party, the mere filing of a cause of action under one of such remedies, constitutes a conclusive election of remedies and that he may not thereafter pursue another inconsistent therewith. See 6 A. L.R.2d at page 18, citing cases. Other courts hold that the commencement of an action is not in itself a conclusive election, but that such election is conclusive only after it is prosecuted to judgment or some elements of estoppel in pais are present. See 6 A.L.R.2d at page 20, and cases cited.

However, we are concerned here only with an election of substantive rights created by the express terms of their contract.

The seller's position is, in effect, that the contract makes provision for two remedies: one, to prosecute an action to enforce a forfeiture, or two, for the recovery of the installment in default. The buyer's position is that the contract gives the seller two substantive rights rather than mere remedial rights. There is an important distinction between an election of inconsistent remedial rights and inconsistent substantive rights. As to whether an election of an inconsistent remedial right is conclusive prior to judgment thereon the courts are not in agreement as heretofore stated, but if one chooses one of two substantive rights, he is bound by this choice. In Italian American Bank of Denver v. Carosella, 81 Colo. 214, 254 P. 771, 776, 58 A.L.R. 250, 257, the court said, after discussing inconsistent remedies:

"* * * And where the right in the subsequent suit is inconsistent with that set up in the former suit, as distinguished from a merely inconsistent remedy, the party is estopped, though the former suit may not have proceeded to judgment. * * *" See, 19 Am.Jur., Estoppel, Sec. 82, p. 728.

What is usually spoken of by the courts as a choice between remedies is actually a choice between substantive rights. United States Fidelity & Guarantee Co. v. First

Nat. Bank in Dallas, 5 Cir., 172 F.2d 258. A remedy is simply a means employed to enforce a right. Paulsen v. Reinecke, 181 La. 917, 160 So. 629, 97 A.L.R. 1184, and in In re Wynn's Estate, 311 Ill.App. 190, 35 N.E.2d 702, 704, the court said:

"* * * The word 'remedy,' is always interpreted to refer to methods of procedure as distinguished from substantive rights. The term 'remedy,' is taken to cover forms of action, methods of procedure, rules of evidence, and all other details of practice and procedure as distinguished from rules pertaining to substantive rights. * * *"

This distinction between the two rights (remedial and substantive) is sometimes difficult to determine but generally any right sought to be enforced by litigation is substantive, while the right to sue to accomplish the enforcement of such right is remedial. Barbour v. Williams, 196 Miss. 409, 17 So.2d 604, 606. The Mississippi court stated the difference in the following language:

"* * * The right to sue is distinct from the right sought to be enforced. The latter is a substantive right and is not subject to legislative impairment. The former is remedial and can be enlarged or diminished provided a reasonable time is allowed in which to enforce the vested right. * * *"

By the terms of the contract heretofore set forth, the right of forfeiture is exercised by the seller declaring the contract forfeited, after which, except for the provision of section 71–126, A.C.A.1939, hereinafter discussed, the purchaser would lose his interest in the property and would be obliged to deliver possession thereof to the seller. If such declaration of forfeiture is not complied with by the purchaser, then the seller has his remedy by resorting to the courts to enforce his substantive right pursuant to his declaration of forfeiture. The right to forfeit is not a remedy; it is a substantive right. The remedial right is resorting to the courts to enforce the substantive right of forfeiture. The contract also gives the seller the right to treat the contract as continuing and expressly provides the remedies for enforcing the right in this language:

"* * * and may enforce the same [the contract] either by specific performance or other appropriate remedy. * * *"

The right to be enforced (to have the contract continued) is substantive and not remedial. As the contract provides the remedy is suit for "specific performance or other appropriate remedy," the appellee, having chosen to exercise this substantive right to treat the contract as continuing, is bound by his choice as to this particular default.

The seller contends that under the provisions of section 71–126, supra, that its right to declare and enforce a forfeiture of the buyer's interest in the contract, was not

available to it until 120 days after default on December 21, 1953, which would be April 20, 1954, and consequently, when it filed its action on March 20, for recovery of the installment due December 21, 1953, there was not then existing two conflicting remedies from which to elect, and therefore, there could be no election. The contention is not sound. From the moment the buyer defaulted, if it did default, there existed two rights open to the seller under the express terms of the contract. These were substantive rights valuable to both the seller and the buyer. The assertion of the right to recover the installment affirmed the contract and negated the right on April 20, or any time thereafter, to declare the contract terminated and to forfeit the buyer's rights thereunder. The enforcement of the right of forfeiture was merely postponed by section 71–126, supra, for a period of 120 days after default occurred but the right to elect, under the contract, was present immediately after such default and continued to exist until the seller brought its action electing to keep the contract alive. Rule 8(e), section 21–408, A.C.A.1939, now Rule 8(f) of the Rules of Civil Procedure, A.R.S.1956, has no application to the question presented here for the reason that we are not concerned with an alternative pleading of inconsistent remedies.

We recognize that section 71–126, supra, became a part of the contract between the seller and buyer as much so as if written therein. American Federation of Labor v. American Sash & Door Co., 67 Ariz. 20, 189 P.2d 912. Section 71–126, supra, provides that:

"Sales on contract—Forfeiture—Extending time.—A forfeiture of the interest of the purchaser in default under a contract for the conveyance of real property *may be enforced* only after the expiration, after such default, of the following periods: * * * Where the purchaser has paid thirty (30) per cent, or more, but less than fifty (50) per cent of the purchase price, one hundred and twenty (120) days; * * *. The purchaser may avoid such forfeiture at any time prior to the expiration of such additional period by complying with the terms of the contract to the date of such compliance. * * *" (Emphasis supplied.)

Even a cursory examination of the language employed therein clearly indicates that it was intended only to postpone the *enforcement* of the right arising by the terms of the contract by reason of the breach. The above quoted statute however, did not change the substantive rights of the parties created by the contract. It did not destroy the seller's right to elect whether he would forthwith file an action treating the contract as continuing and sue for the installment and interest due on December 21, 1953; neither did it destroy his right to treat the contract as terminated immediately upon such

breach and upon the expiration of the 120 days grace given by the statute, bring an action to enforce the forfeiture, provided the buyer has not prior thereto complied with the terms of the contract to the date of such compliance.

Judgment reversed.

UDALL, C. J., and WINDES, STRUCK-MEYER, and LA PRADE, JJ., concur.