423 P.2d 132

Joseph E. BILLMAN and Vera S. Billman,
Appellants,

v.

ACE RESTAURANT SUPPLY CO., Inc., an
Arizona corporation, Appellee.

No. 1 CA–CIV 236.

Court of Appeals of Arizona.

Jan. 30, 1967.

Ralph H. Knight and Henry H. Miller,
Phoenix, for appellants.

Leonard S. Sharman, Phoenix, for appellee.

D. L. GREER, Superior Court Judge.

Ace Restaurant Supply Company, doing business in Phoenix, Arizona, hereinafter referred to as "Seller", sold to Joseph E. Billman and Vera S. Billman, husband and wife, hereinafter referred to as "Buyer", new and used restaurant equipment under a conditional sales contract, on April 17, 1962. Seller delivered said equipment to Buyer's restaurant at Sunnyslope, Arizona. The conditional sales contract contained the usual provision for reservation of title in Seller until the equipment was paid for and provided for Buyer to pay $9,395.73, with $3,317.73 as cash down payment and $6,078.00 in one final payment due July 17, 1962.

Additionally Seller sold Buyer miscellaneous equipment on open account, for which Buyer agreed to pay $488.53. Under its contract, Seller was to furnish all equipment sold. However, Seller could not install, nor supply, certain stainless steel drainboards, a metal lining on the wall behind the stove and an exhaust fan and hood above the stove, from its inventory. These items were required to be specially built for the restaurant and were, at Buyer's request, furnished and installed by Stainless Products, Inc., at a cost of $850.-80. When Stainless Products was not paid it filed and served on Buyer a laborer and materialman's lien on June 18, 1962. Subsequently and on September 12, 1962, Buyer paid Stainless Products the sum of $850.80 and caused the lien to be released.

Buyer leased the restaurant to Lief and Dorothy Clabo, husband and wife, who were inexperienced in the restaurant business. The restaurant opened the early part of May, 1962. It was situated one-half block from the Sunnyslope High School, served the High School students and apparently did a fair business until school was dismissed for the year. As a result of the dismissal of school and the lack of air conditioning in the premises, business dropped off to nothing during June and July. The lessees were unable to pay their bills and they closed down the restaurant and ceased all operations on July 30, 1962. The restaurant never opened again.

Just prior to the close of the restaurant and after the final payment was due, Seller, William W. Lovett, the manager of Ace Restaurant Supply Co., contacted the lessees and advised them that if the payment was not made that he would repossess said equipment. Lessees, at the direction of Buyer, told Lovett that should he show up lessees were to "run" him "off the place", and "call the Sheriff".

The pleadings allege that notice of election to rescind was given the Seller on August 10, 1962. Additionally, the following colloquy took place at the time of trial:

MR. KNIGHT: "Q Now, isn't it a fact that before this lawsuit was filed and subsequent to the delivery of all of this equipment, the Billmans through their attorney notified you and demanded a rescission of this agreement; isn't that correct?

MR. LOVETT: A I recall such a letter.

Q And in this letter they tendered back all of the equipment and demanded the return of the—

A Yes, sir, and that letter was received about the 11th of August, 10th or 11th, as I recall it."

However, there was not one scintilla of evidence in the record showing that Buyer returned or offered to return the restaurant equipment to the Seller in substantially as good condition as it was at the time the equipment was transferred to the Buyer in April, 1962.

On October 5, 1962, Seller filed suit against Buyer, alleging default under the conditional sales contract and demanded the sum of $6,566.53, plus attorney's fees. Buyer answered and counterclaimed. Buyer denied default and alleged Seller had breached the contract prior to the date of final payment. Buyer's counterclaim con-

tains two "causes of action" against Seller, the first cause of action alleged Seller's breach of warranty and demanded damages in the sum of $3,317.73. The second cause of action raises some issues unimportant to this appeal and alleged that Buyer had been served with Stainless Products notice and claim of lien; that the filing of such lien and failure to discharge it constituted a breach of the implied warranties of title to the equipment under the Uniform Sales Act and that Buyer was, therefore, entitled to rescission and storage charges of the equipment. Buyer did not elect prior to, nor during, trial which of the causes of action contained in the counterclaim Buyer stood on. The trial court found for the Plaintiff, Seller, and awarded it judgment in the amount demanded by Plaintiff, less the sum of $850.80, being the amount Buyer paid to Stainless Products in discharging its lien. Judgment was for $5,715.73, plus attorney's fees in the sum of $1000.00. After motion for new trial was denied, Buyer filed and perfected an appeal to this Court.

We must presume the Trial Court found the necessary facts to support its judgment, providing there is evidence in the record to support it. The evidence, when viewed in this light, sustains the action of the Trial Court. Colvin v. Superior Equipment Company, 96 Ariz. 113, 392 P.2d 778 (1964); Cheshire v. Thurston, 70 Ariz. 299, 219 P.2d 1043 (1950).

The Buyer (Appellant) submits three questions for review:

"1. Is the Seller of goods under a Conditional Sales Contract in breach of express or implied warranties if he allows liens to be placed upon the Buyer's premises by creditors who have furnished labor or material pursuant to the Seller's order, and in the performance of the Conditional Sales Contract, which liens are recorded *before* the date for payment of the full purchase price under the contract *and not released by the Seller at the time for final payment?*

"2. If such liens constitute a breach of an express or implied warranty of the Seller is such a breach grounds for Buyer's rescission?

"3. Can a party who first commits a substantial breach of contract maintain an action against the other contracting party for a subsequent failure to perform?"

The facts of the case do not support the three questions submitted for review by the Buyer (Appellant). Rather we are constrained to the opinion that the Uniform Sales Act (A.R.S. 44–201 et seq.) is not applicable to the sale to the Buyer of the equipment manufactured and installed by Stainless Products. The sub-contract with Stainless Products was one for work, labor and materials and not a contract to sell. Crystal Recreation v. Seattle Ass'n of Credit Men, 34 Wash.2d 553, 209 P.2d 358 (1949).

As stated in *Crystal*, supra:

"However, we believe it to be the better rule that the Act does not purport to include within its purview contracts for work, labor and materials. In a sound, analytical opinion, the Utah court sets forth the reasons for this rule in the case of Sidney Stevens Implement Co. v. Hintze, 92 Utah 264, 67 P.2d 632, 635, 111 A.L.R. 331, wherein a contract to construct a trailer especially for a traveling salesman, which was not readily salable to others in the manufacturer's regular course of business, was held to be a contract for work, labor and materials, and not a contract to sell. In construing §§ 5, supra, and 76 (defining future goods) of the Act the court said: '* * * If, as a matter of law, a contract is one for work, labor, and materials, it is not a contract of sale and consequently would not come within the definitions contained in sections 5 and 76. These two sections, therefore, do not contain any new rule expanding the law of sales to include within its purview a transaction which is not a "contract to sell," nor does the act contain any definitions of "contract to sell" which

enlarges its scope so as to eliminate the distinction, existing before the creation of the Uniform Sales Act, between a contract of sale and a contract for work, labor, and materials. We fail to see, therefore, how sections 5 and 76 of the Sales Act can apply to a contract involving not a "contract to sell," but a contract involving the manufacture of something especially for the buyer and not readily saleable to others in the manufacturer's regular course of business, if such a contract cannot be said to be a contract to sell when made, but must be considered a contract for work, labor and materials.' "

■ Buyer by answer and counterclaim alleged that Seller's failure to discharge Stainless Products' lien constituted a breach of the implied warranty of title under the Uniform Sales Act and relies in particular on the provisions of A.R.S. Section 44-213, which provides as follows:

"In a contract to sell or a sale, unless a contrary intention appears, there is:

1. An implied warranty on the part of the seller that in case of a sale he has a right to sell the goods, and that in case of a contract to sell he will have a right to sell the goods at the time when the property is to pass.

2. An implied warranty that the buyer shall have and enjoy quiet possession of the goods as against any lawful claims existing at the time of the sale.

3. An implied warranty that the goods shall be free at the time of the sale from any charge or encumbrance in favor of any third person, not declared or known to the buyer before or at the time when the contract or sale is made.

4. This section shall not, however, be held to render liable a sheriff, auctioneer, mortgagee, or other person professing to sell by virtue of authority in fact or law, goods in which a third person has a legal or equitable interest."

However, the doctrine of "implied warranty" as set forth in the above section does not apply to the sale of property not covered by the Uniform Sales Act, such as the property furnished by Stainless Products. See *Crystal*, supra, Hamberlin v. Townsend, 76 Ariz. 191, 261 P.2d 1003 (1953).

■ We feel, however, that there is an additional ground on which the decision of the trial court can and must be affirmed, and that is, that as a condition precedent to bringing an action for rescission Buyer must, under the provisions of A.R.S. Section 44-269, subsec. C, show notice to Seller of election to rescind within a reasonable time, and a return, or offer to return, the goods to the Seller in substantially as good condition as they were in at the time the property was transferred to the Buyer. The statute is as follows:

"Where the goods have been delivered to the buyer, he cannot rescind the sale if he knew of the breach of warranty when he accepted the goods, *or if he fails to notify the seller within a reasonable time of the election to rescind, or if he fails to return or to offer to return the goods to the seller in substantially as good condition as they were in at the time the property was transferred to the buyer.* But if deterioration or injury of the goods is due to the breach of warranty, such deterioration or injury shall not prevent the buyer from returning or offering to return the goods to the seller and rescinding the sale." (Emphasis supplied)

■ As we pointed out above, there is not one scintilla of evidence showing that the goods were in substantially the same condition at the time the letter of rescission was written on August 11, as they were in April of 1962. The Buyer had the burden of establishing that said equipment was in substantially the same condition after it is used for a period of three months and this Buyer failed to do. California Steel Products Company v. Wadlow, 58 Ariz. 69, 118 P.2d 67 (1941); Eliason v. Walker, 42 Wash.2d 473, 256 P.2d 298 (1953).

■ Finally, we point out that the Buyer filed two causes of action: The first in tort for damages, and the second in rescission, which are inconsistent remedies. However,

at the time of trial an election must be made as to which remedy is pursued. As stated by this Court in Higgins v. Kittleson, 1 Ariz.App. 244, 401 P.2d 412 (1965), involving a claim pursuing a remedy in rescission and breach of contract for damages, held as follows:

"Plaintiff's complaint may be interpreted as pursuing remedies (1) and (3) above stated. At the end of her case in chief she only withdrew the application for damages, leaving the remainder of her claims. She should be required to clearly state and elect which remedy she is pursuing.

We hold that the learned trial court in directing a verdict notwithstanding this aspect of the case committed prejudicial error."

See also Wilhorn Builders v. Cortaro Management Co., 81 Ariz. 381, 307 P.2d 94 (1957). Miller v. Zander, 85 Misc. 499, 147 N.Y.S. 479 (1914).

■ In the action filed under the Uniform Sales Act for breach of warranty by the Seller, the Buyer must elect whether to rescind the contract or to maintain an action in damages. Section 44-269 A.R.S.

As stated by the U.S. Court of Appeals, Ninth Circuit, in the case of Authorized Supply Co. of Arizona v. Swift & Company et al., 271 F.2d 242 (1959):

"* * * (W)here the goods do not measure up to the warranty, the buyer has an election to return the goods and rescind the sale, or to keep the goods and sue for damages

'When a buyer has claimed and been granted a remedy in any one of these ways, no other remedy can thereafter be granted.'"

He must, however, elect between these remedies and is bound by his election.

For the reasons set forth, the judgment of the trial court is affirmed.

CAMERON, C. J., and STEVENS, J., concur.

NOTE: Judge FRANCIS J. DONOFRIO having requested that he be relieved from consideration of this matter, Judge D. L. GREER was called to sit in his stead and participate in the determination of this decision.