562 P.2d 1378

**MOBILE HOME SALES MANAGEMENT INCORPORATED, an Arizona Corporation dba Leisure Livin' Mobile Sales, Appellant,**

v.

**Gerard BROWN and Zoe Gates Brown, his wife, Appellees.**

**No. 1 CA–CIV 2811.**

Court of Appeals of Arizona, Division 1, Department A.

April 7, 1977.

Harold Riddel, Phoenix, for appellant.

Robbins, Green, O'Grady & Abbuhl, P. A. by John D. Lyons, Jr., Phoenix, for appellee.

## OPINION

DONOFRIO, Judge.

This is an appeal by Leisure Livin' Mobile Sales, defendant below, from a jury verdict and judgment thereon (and also from certain orders hereinafter discussed) in favor of appellees/Browns, plaintiffs below, and against defendant/appellant.

The judgment cancelled a contract of sale of a mobile home and awarded incidental damages in the sum of $3,435.77 and consequential damages in the sum of $2,000.00 to the plaintiffs.

Viewing the evidence in the light most favorable to sustaining the judgment, the facts, briefly, are that on January 4, 1972, plaintiffs ordered a mobile home from defendant with certain specifications. This unit was delivered to Phoenix from California on February 28. On March 1st, plaintiffs looked at the mobile home and entered into a purchase agreement with defendant and made their down payment. At the time of the signing of the agreement plaintiffs noted a number of defects and deficiencies in the unit's construction and finishing which the defendant promised would be corrected and remedied.

On March 4, 1972 the unit was delivered to plaintiffs' lot and partially set up. From here on there is much evidence on what took place. Suffice to say that there were many phone calls, personal visits and correspondence involved in trying to get the home set up on the lot and in having the numerous defects and deficiencies remedied. Some of the problems revolved around the failure to properly furnish certain promised options regarding awnings, skirtings and air conditioning that were to be part of the mobile home.

On April 15, plaintiffs consulted an attorney who subsequently sent defendant a letter giving notice that plaintiffs considered the contract breached, and that plaintiffs thereby revoked their prior acceptance of the mobile home and cancelled the purchase agreement. In the letter plaintiffs demanded the return of their purchase price together with damages, but did not formally "tender back" the mobile home. Defendant neither contacted plaintiffs in answer to the letter nor did it make known any wishes it might have as to what disposition might be made regarding the mobile home. Plaintiffs' counsel made efforts to negotiate the matter with the defendant without success. Meanwhile, plaintiffs lived in the mobile home and maintained it. Thereafter,

on May 10, 1972, plaintiffs filed this suit which resulted in the judgment and orders from which this appeal is taken.

This appeal calls for several interpretations of Arizona's Uniform Commercial Code (UCC) which we shall treat in answering three categories of crucial questions raised by the briefs. Hereafter they are labeled Tender Back, Waiver and Disclaimer, and Damages. We also cover an appeal from the judgment for jury fees in a separate heading.

## TENDER BACK

We first deal with the issue which revolves around the question of whether the trial court erred in denying defendant's motion for judgment notwithstanding the verdict which was based upon the grounds of plaintiffs' failure to tender back the defective mobile home.

Defendant contends that plaintiffs' suit is one of rescission and being such a suit that a tender back of the goods, in this case the mobile home, was a prerequisite to recovery. Defendant also argued that plaintiffs' use of the merchandise (mobile home) for so long a period of time as plaintiffs had it in their possession, i. e., during pendency of law suit, was a waiver as a matter of law of their right to revoke the acceptance of the mobile home. We do not agree with these contentions.

First, plaintiffs in their complaint have not termed their action as one in rescission. In other words, it is not the traditional equitable action for rescission where a party may not rescind a contract and at the same time also sue to recover damages, nor is it an action where a party, seeking to rescind a contract, must restore or offer to restore to the other party that which he has received under the contract. Cf. *Jennings v. Lee,* 105 Ariz. 167, 461 P.2d 161 (1969). It is, as we interpret it, an action where plaintiffs are suing under the UCC for cancellation of the contract and for the return to them of the purchase price which they as buyers had paid, and also for their incidental and consequential damages (A.R.S. § 44–2394) resulting from the seller's

breach. Part of this procedure for recovery is set forth in A.R.S. § 44–2390 which reads:

"A. Where the seller fails to make delivery or repudiates *or the buyer rightfully rejects or justifiably revokes acceptance then with respect to any goods involved, and with respect to the whole if the breach goes to the whole contract (§ 44–2375), the buyer may cancel and whether or not he has done so may in addition to recovering so much of the price as has been paid:*

1. 'Cover' and have damages under § 44–2391 as to all the goods affected whether or not they have been identified to the contract; or

2. Recover damages for non-delivery as provided in this article (§ 44–2392).

B. Where the seller fails to deliver or repudiates the buyer may also:

1. If the goods have been identified recover them as provided in this article (§ 44–2350); or

2. In a proper case obtain specific performance or replevy the goods as provided in this article (§ 44–2395).

C. *On rightful rejection or justifiable revocation of acceptance a buyer has a security interest in goods in his possession or control for any payments made on their price and any expenses reasonably incurred in their inspection, receipt, transportation, care and custody and may hold such goods and resell them in like manner as an aggrieved seller (§ 44–2385).* Added Laws 1967, Ch. 3, § 5." (Emphasis added).

The law, prior to our adoption of the UCC, may have required a tender back in a similar situation,[1] but we are of the opinion that the tender back requirement has now been eliminated by the adoption of the UCC.

Based upon the breach, plaintiffs, under subsection (C) of § 44–2390, supra, had a security interest in the home for the purchase monies they had paid to the seller. The question then arises as to what should be done insofar as tendering back of the home and protecting his security interest is concerned when a buyer justifiably revokes acceptance (§ 44–2390(A), supra) of the unit.

In this case, the evidence shows that the seller had never made a request to have the mobile home returned, i. e., "turned back" to it. Had it done so the law is clear as to what should be done when the buyer does not have a security interest under such circumstances. With reference to the buyer's obligation in this respect, A.R.S. § 44–2365(B)(2)(3) provides:

"2. If the buyer has before rejection taken physical possession of goods in which he does not have a security interest under the provisions of this article (subsection C of § 44–2390), *he is under a duty after rejection to hold them with reasonable care at the seller's disposition for a time sufficient to permit the seller to remove them;* but

3. The buyer has no further obligations with regard to goods rightfully rejected." (Emphasis Supplied).

Assuming the absence of a security interest, this means that if a buyer wishes to revoke his acceptance of goods that he had physically accepted then he has an obligation to hold the goods with reasonable care ready for the seller's disposition. In other words, if the seller asks for the goods back then the buyer must be in a position to make those goods available to him. The next question which is crucial to this case is: What then must a buyer do when he has a security interest and has not been given any direction or request of what to do by the seller? A sensible interpretation of the rule would be that if no request is made by the seller then the buyer should not be penalized by denying said buyer rights that are given to him under the other sections of the code. Particularly the right given to him under the section which provides that he may hold the goods and resell them as

---

1. See 67 Am.Jur.2d Sales, § 714, and *Billman v. Ace Restaurant Supply Co.,* 5 Ariz.App. 56, 423 P.2d 132 (1967).

provided in § 44–2385 which is cited in § 44–2390(C).

In this case, it is clear that the code provides that when purchase money has been paid for goods this creates a security interest in the goods in favor of the buyer for the purchase money, and that the buyer has not only the right to retain the goods, but under certain circumstances has a right, after having given notice of revocation of acceptance and no response having been received, to hold them with reasonable care and to sell those goods if necessary in order to acquire the money to get back his purchase price. A.R.S. §§ 44–2390, 44–2385, 44–2371 and 44–2365, supra.

A Colorado case interpreting this area of the UCC states:

"The buyer, having justifiably revoked acceptance, was entitled to the remedies provided in the Uniform Commercial Code. C.R.S.1963, 155–2–711. This section of the code provides that where the buyer justifiably revokes acceptance, the buyer may recover so much of the price as he has paid, and the section further provides that the buyer has a security interest in the goods in his possession or control for any payments made. Because of this security interest, the buyer was not, as seller claims, required to return the machine or to hold it for the seller's disposition. The judgment of the trial court correctly awarded the buyer the remedies to which he was entitled under the Code." *Irrigation Motor and Pump Co. v. Belcher*, 29 Colo.App. 343, 483 P.2d 980 at 982 (1971).

We believe this is a correct interpretation of the UCC which we have adopted and therefore hold that tender back is not a legal prerequisite to the Browns' (buyers') action for cancellation in this case. The observation can be made at this point that plaintiffs by living in the home and maintaining it to the best of their ability were also preserving it for the benefit of the seller as well as holding it for their own security.[2]

We do not pass upon the issues that might be involved had plaintiffs in this case brought an action for rescission under the common law rules of equity.

## WAIVER & DISCLAIMER

Defendant contends that plaintiffs by staying in the mobile home during all the time through the pendency of the suit was a waiver of their right to revoke their acceptance of the unit. In this regard defendant contends the principle of estoppel which was retained by the UCC (A.R.S. § 44–2203) is also applicable. Defendant also claims that these issues were matters for the trial court and not the jury. In other words, that it was error to not let the jury sit only in an advisory capacity.

In opposition to defendant's contentions plaintiffs argue that under the issues joined these were proper questions for the jury. We agree.

The plaintiffs had brought their action to cancel for breach of warranty under the provisions of the UCC which was an action in law. Both sides had presented evidence which was in conflict and this evidence concerned itself with the issue as to whether the seller had breached its warranty and whether the buyers had informed the seller of this breach and whether they had within a reasonable time sought remedy from the seller for the breach. These were all reme-

2. The facts and arguments advanced by plaintiffs were that from the time the unit was delivered and partially set up (March 4) and until they were forced to consult an attorney (April 15) they were persuading and waiting on defendant to remedy the defects they had discovered and to also have the different options they had agreed upon installed by defendant; that after consulting their attorney and having to revoke their acceptance of the unit and cancel the purchase contract they were in a dilem-

ma. The dilemma being that they had given up their apartment and that they had given their life savings as a down payment and had no other place to go. In addition, they were faced with the problem that, should they move out of the mobile home, the home would begin to deteriorate and also be subject to vandalism. Consequently, they remained living in the unit the best they could, particularly since it was up to the seller to take action on the goods and that it had not done so.

dies provided for under our code and upon which the jury decided in favor of plaintiffs.

■ A.R.S. § 44–2371, which deals with revocation of acceptance, governs this action. The seller was urging to the court that the buyers did not have the right to revoke the acceptance, but if they did have the right to revoke that they waived it. Section 44–2371 is explicit in giving the buyer this right and sets forth the circumstances under which it becomes effective. Whether there was a proper revocation of acceptance because of a breach of warranty was made one of the main issues in the case and the court properly placed this issue of revocation before the jury in its instructions pursuant to the requirements of this section.

As mentioned before, the defendant has raised the issue that the trial below was an equitable proceeding and, as such, the jury should have sat only in an advisory capacity, a contention with which we do not agree.

■ True, the UCC combines some equitable remedies in with other particular remedies provided in the law itself, for example, A.R.S. § 44–2203. Since this case was based on breach of contract, more specifically breach of warranty, under the UCC it is an action founded under the common and statutory law as distinguished from an action founded on an equity which would place it in the equitable action category. Looking at the record, we find that under the issues joined, including the question raised as to waiver, the trial court properly tried the case as an action in law. It instructed the jury that whether there was a breach of any of the warranties was for their determination and also instructed them that a seller was not liable for a breach of warranty unless the buyer gives him notice of such breach within a reasonable time after the buyer knew, or as a reasonable person, ought to have known the breach of warranty. A.R.S. § 44–2371(B), supra. Also, that what amounts to a reasonable time depends upon the circumstances and the kind of product that is involved.

They were also instructed that the buyer merely must inform the seller of the alleged breach of warranty and of the buyer's intention to look to the seller for damages. The jury was also to determine whether the buyer gave this information to the seller, and if so, whether the buyer acted within a reasonable time in giving seller such notice. This was all consistent with the theory of the case as framed by the pleadings and with the provisions of the UCC cited herein.

The following excerpts taken from Anderson, Uniform Commercial Code (2nd Ed. 1971) on the UCC are pertinent, particularly since A.R.S. § 44–2371 is taken from § 2–608 of the UCC mentioned therein:

"The use of goods by the buyer does not necessarily bar his revocation of acceptance. This is particularly so where the defect did not become apparent until use was made of the goods." Anderson, § 2–608:26, p. 250.

"Where the buyer makes use of the goods because it was the commercially reasonable thing to do, it is likely that the Code courts will not hold that he is barred or has waived his right to cancel, where the use of the goods reasonably appear to hold the prospect of less harm or loss than would be sustained by not attempting to use them. A Code court which is unwilling to give literal effect to the 'inconsistent with the ownership' provision has pre-Code authority under the Sales Act in support of its position, it having been held that although the Sales Act similarly provided 'that a buyer is deemed to have accepted the goods when he does any act inconsistent with the ownership of the seller', the use of the goods by the buyer did not bar the buyer from rescinding where he gave prompt notice of his objection and only made a trial use of the goods because there was no other escape from the predicament caused by the seller's breach." Anderson, § 2–711:27, p. 424.

■ We hold that the staying in the mobile home pending the law suit cannot be, as a matter of law in this case, considered a

waiver of the buyers' right to revoke the prior acceptance of the home.

We now deal with the disclaimer issue. It is conceded that the trial court erred in submitting to the jury as a fact question whether the disclaimer in the sales contract of the implied warranty of fitness for a particular purpose was "conspicuous." A.R.S. § 44–2208(10) provides that whether a term is conspicuous or not is for decision by the court and thus not a jury decision. The court's instruction which submitted the question of whether the disclaimer was conspicuous to the jury,[3] however, was not objected to.

Both 16 A.R.S., Rules of Civil Procedure, Rule 61 and Art. 6, § 27 of the Arizona Constitution provide, in substance, that the court must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties. More specifically, Art. 6, § 27 provides in part:

"No cause shall be reversed for technical error in pleadings or proceedings when upon the whole case it shall appear that substantial justice has been done."

We believe that submitting the issue of conspicuousness to the jury, although technically incorrect, did not constitute fundamental error.

Defendant did not object to the instruction which was given. 16 A.R.S., Rules of Civil Procedure, Rule 51(a), insofar as pertinent, provides:

" * * * No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retired to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection."

In *Tryon v. Naegle,* 20 Ariz.App. 138, 510 P.2d 768 (1973), the court said:

"[T]he doctrine of fundamental error in civil cases should be sparingly applied, *Ortega v. State,* 6 Ariz.App. 356, 432 P.2d 904 (1967), and possibly limited to those cases where the instruction deprives either party of a constitutional right.  *  *

We therefore hold that the giving of the complained of instructions, not constituting fundamental error coupled with the failure of the plaintiffs to timely object waives their right to have this matter reviewed on appeal." *Tryon v. Naegle,* supra, at 772. [Quoting *Moser v. Mardian Construction Co.,* 20 Ariz.App. 27, 509 P.2d 1064 (1973)].

Since no objection was made by defendant at any time before the verdict to any part of the trial court's instruction, it has no standing to now urge the error.

Although defendant did not object, we have examined the record as to whether defendant's rights were substantially affected. Even if the jury had found the implied warranty of fitness for a particular purpose had been negated by a sufficiently conspicuous disclaimer, the result would have been the same. The evidence and the law as given on the subject compelled a finding that at least the other first two types of warranties (mentioned in instruction, see Footnote 3) existed and that such warranties had been breached. Consequently, as a matter of law, plaintiffs were entitled to cancel the contract and to receive back their purchase price. The evidence further supported awarding of incidental and consequential damages.

3. The trial court's instruction reads:
"The parties may exclude or disclaim any of the warranties previously defined by the express terms of the contract of sale.
The Court has ruled that neither the expressed warranty nor the implied warranty of merchantability has been disclaimed.
The Court has further ruled that the written contract of the parties by its terms expressly excludes or disclaims the implied warranty of fitness for a particular purpose. In order to constitute this disclaimer legally valid, it must be further determined that such exclusion or disclaimer is 'conspicuous.' *Whether or not it is conspicuous is for you to determine.*
If you determine that such exclusion was not conspicuous, you need not consider the issue of a breach of implied warranty of fitness for a particular purpose in your further deliberations as to whether there was a breach of this warranty.
In either event, the issue of whether there was a breach of the other warranties here in question will remain for your determination." (Emphasis added).

We are of the opinion that the instruction concerning the issue of conspicuousness did not affect the substantial right of the defendant and that the error was harmless.

## DAMAGES

Defendant contends that the award of $2,000.00 for consequential damages was excessive and not supported by the evidence, mainly because the evidence did not show any bodily injury to plaintiffs. Defendant also contends that the award of $3,435.77 as incidental damages was for damages sustained by plaintiffs occurring mostly after April 18, 1972 when defendant received notice that the plaintiffs considered the contract breached, and was therefore not a proper measure of damages.

■ Applicable sections of A.R.S. § 44–2390 dealing with buyers' remedies provide:

"A. Where * * * the buyer * * justifiably revokes acceptance then with respect to any goods involved, and with respect to the whole if the breach goes to the whole contract (§ 44–2375), the buyer may cancel and whether or not he has done so may in addition to recovering so much of the purchase price as has been paid:

* * * * * *

2. Recover damages for non-delivery as provided in this article (§ 44–2392)."

A.R.S. § 44–2392 describes three types of damages which may be recovered for non-delivery or repudiation (and, by cross-reference from § 44–2390, for revocation of acceptance):

"A. Subject to the provisions of this article with respect to proof of market price (§ 44–2402), the measure of damages for non-delivery or repudiation by the seller is the difference between the market price at the time when the buyer learned of the breach and the contract price together with any incidental and consequential damages provided in this article (§ 44–2394), but less expenses saved in the consequence of the seller's breach."

The terms "incidental" and "consequential" damages are defined in A.R.S. § 44–2394:

"A. Incidental damages resulting from the seller's breach include expenses reasonably incurred in inspection, receipt, transportation and care and custody of goods rightfully rejected, any commercially reasonable charges, expenses or commissions in connection with effecting cover and *any other reasonable expense incident to the delay or other breach.*

B. Consequential damages resulting from the seller's breach include:

1. Any loss resulting from general or particular requirements and needs of which the seller at the time of contract had reason to know and which could not reasonably be prevented by cover or otherwise; and

2. *Injury of person or property proximately resulting from any breach of warranty.*" (Emphasis supplied).

Thus, if there is a justifiable revocation of acceptance the buyer is entitled to recover the return of his purchase price and any incidental and consequential damages he has suffered.[4] Also, that consequential damages include injury of person resulting from any breach of warranty.

In the typical personal injury action compensation may be awarded for physical and mental pain and suffering. Logically, it is possible in a case based on the UCC where there is injury to a person, to recover the same kind of damages. We hold that the intent of the statute was to cover such damages.

■ Defendant urges that plaintiffs are not entitled to consequential damages because there is no evidence that they suffered bodily injury, i. e., physical injury. Such a showing is not necessary. A.R.S. § 44–2394 refers to "injury to persons." In the instant case we find evidence to support injury to the person of the plaintiffs. Both of them testified concerning the physical discomforts and illnesses they suffered as a result of the lack of air-conditioning, heat-

---

4. The judgment in this case cancelled the purchase agreement, directed return of the purchase price, and also directed that the mobile home be returned to the defendant free and clear of any and all encumbrances.

ing and the other defective conditions which existed in the home. These are injuries to the persons of plaintiffs if proximately resulting from the breach of warranty. § 44–2394, supra. We are unable to find any objection to the instruction the court gave on damages which was very brief, the pertinent part thereof reading that "consequential damages include injury to the persons or property of the plaintiffs proximately resulting from the breach of warranty." We do not pass upon whether damages for mental or emotional distress or for pain and suffering are recoverable in the absence of the showing of a physical impact.

 Defendant also complains that the jury did not award an offset against plaintiffs' damages for the reasonable rental value of the mobile home. The court instructed the jury that such an offset was allowable, and particularly instructed that the defendant was entitled to have deducted from any consequential or incidental damages they might find against it a reasonable sum for the use of the home. Although the jury did not spell out such a sum it is possible to infer that the $2,000 awarded for consequential damages, instead of the $3,000 requested by plaintiffs, represented such an offset. In any event, we are unable to find any prejudicial error since plaintiffs were entitled to retain possession of the mobile home as security for the return of the purchase price and should not be penalized for such retention which under the circumstances was reasonable. See Tender Back, supra.

Defendant also contends that the incidental damages proved by plaintiffs are not within the definition of the statute, and that they should not be compensated for expenses after April 18, 1972.

This contention is based on the argument that the plaintiff never offered to return the home at the time of the letter in April. This issue was dealt with when we considered the tender back issue. A.R.S. § 44–2394(A) includes within incidental damages any "reasonable expense incident to the delay or breach." We find the record supports the view that the damages proved by plaintiffs were out-of-pocket expenses directly and proximately arising from the breach of warranty.

### JURY FEES

 Defendant has appealed from the judgment for jury fees in favor of Maricopa County. We have not found, nor have we been referred to, any reason or authority why this judgment should not stand.

The judgments and orders of the trial court are affirmed.

NELSON, P. J., and OGG, J., concurring.